[No. D030198. Fourth Dist., Div. One. Jan. 5, 1999.]

THE PEOPLE, Plaintiff and Appellant, v.
MICHAEL ANTHONY DURANT, Defendant and Respondent.

**COUNSEL**

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Richard J. Sachs, Deputy District Attorneys, for Plaintiff and Appellant.

Alisa A. Shorago, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**HUFFMAN, J.**—Following the holdings of *People* v. *Hendrix* (1997) 16 Cal.4th 508 [66 Cal.Rptr.2d 431, 941 P.2d 64] and *People* v. *Deloza* (1998)

18 Cal.4th 585 [76 Cal.Rptr.2d 255, 957 P.2d 945], in this case we consider what additional factors may be involved in determining the application of the narrow statutory exception to the mandatory imposition of consecutive terms for multiple current offenses of qualified repeat felons under the three strikes law.

In 1996, Michael Anthony Durant was convicted by a jury of residential burglary (Pen. Code,[1] §§ 459/460) and two attempted residental burglaries (§§ 664/459/460).[2] In a bifurcated proceeding, the court found true allegations Durant had served one prior prison term (§ 667.5, subd. (b)), had one prior serious felony conviction (§ 667, subd. (a)(1)), and had suffered thirteen prior convictions for serious or violent felonies (§§ 667, subds. (b)-(i), 1170.12). The court sentenced Durant to a total term of 80 years to life, consisting of 3 consecutive terms of 25 years to life with an additional consecutive term of 5 years for his prior serious felony conviction.

On appeal, this court affirmed the convictions and true findings, but remanded the case for resentencing in light of *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]. (*People* v. *Durant* (May 14, 1997) D025790/D026456 [nonpub. opn.].)[3]

At the time of resentencing, Durant asked the court to strike all but one of his serious/violent felony priors under section 1385 in order to avoid the life term required by the three strikes law or, in the alternative, to run his life terms concurrently rather than consecutively. The court denied his request to strike any priors, but imposed a new sentence of 30 years to life, consisting of 3 concurrent 25-year-to-life terms plus the 5-year prior serious felony conviction enhancement.[4]

■ The People appeal,[5] contending the trial court's imposition of concurrent sentences for Durant's multiple current offenses constitutes an unauthorized sentence under the three strikes law. (§ 1238, subd. (a)(10).) We agree. Under the facts and law controlling in this case, Durant's offenses were not committed "on the same occasion" nor did they arise "from the same set of operative facts" as required for application of the narrow discretionary exception to the imposition of mandatory consecutive terms

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] Durant's jury trial was conducted jointly with his codefendant brother Richard, whose judgment was affirmed on appeal.

[3] We have taken judicial notice of the records of Durant's first trial. (Evid. Code, §§ 452, subds. (g), (h), 453, 459.)

[4] The court again struck the one-year prison prior conviction enhancement.

[5] Durant's appeal from the sentence is addressed separately in *People* v. *Durant* (Jan. 5, 1999) D030392 (nonpub. opn.), as it raises a legal issue not relevant to this appeal.

for multiple current offenses under sections 667, subdivision (c)(6) and (7), and 1170.12, subdivision (a)(6) and (7).

## FACTUAL BACKGROUND

*Facts at Trial*:

Because the facts presented at trial are relevant to the question of whether the trial court imposed an authorized sentence on remand, we restate those facts from our unpublished opinion in Durant's first appeal, *People* v. *Durant, supra*, D025790/D026456.

"On September 19, 1995, a San Diego Police Department surveillance team was assigned to follow Michael and Richard Durant. The surveillance was conducted from the ground and air.

"Police observed as Richard got into his vehicle, drove to El Cajon, and eventually arrived at Michael's apartment. Richard went into Michael's apartment and the two returned to the vehicle. They raised up the hood of the vehicle and were doing something in front of the car.

"Richard and Michael got into the vehicle and drove to a shopping center which contained a Thrifty drugstore. Michael entered the store for a period of time and returned to the vehicle. When Michael returned to the car, the two men drove down Austin Street.

"First the car went westbound and then, as if to 'clear[] his tail,' the car made a U-turn and proceeded eastbound on Austin Street. The aerial surveillance team warned the ground police units to stay back, but maintained surveillance from the air.

"Aerial surveillance was blocked by trees for a short period and the two men were next observed as Richard dropped Michael off outside a condominium complex on Austin Street. There was a green electrical box near the place where Richard dropped Michael off.

"Richard returned to the Thrifty shopping mall. Michael wandered through the condominium complex near where Richard had dropped him off. Michael again used surveillance avoidance techniques, such as going one direction and then suddenly turning and backtracking in the direction from which he had come.

"Michael approached a corner house[] belonging to Richard Hatch numerous times. He returned several times to the street to look up and down and

would then return to the house. Michael eventually walked to the rear of the Hatch house and went underneath a patio where there was a sliding glass door. Michael remained in that area for a considerable time before reappearing and returning to the street. Fresh pry marks were later discovered on the sliding glass door.

"After a few minutes, Michael returned to walking through the complex and looking at condominiums. Michael next approached the home of Maggie Altadonna. Michael went to the rear of the Altadonna home and knelt down near the sliding glass door for a period of about five to six minutes. Michael left the house and returned to looking at different homes. Later, fresh scrapes and marks were found on the door.

"Next Michael walked down several streets, eventually approaching Randall Menser's house through the backyard. A photojournalist was shooting footage of the surveillance and followed Michael onto Menser's property. The photojournalist observed an appliance and a bag containing Coke cans in the backyard of the home.

"The aerial surveillance team circled around and observed Michael near Menser's window, apparently trying to force the window open. After 15 to 20 minutes, the team saw Michael come out of the patio door area carrying an unidentified object, which was later determined to be a VCR and a remote control. Michael brought the object out toward the street and hid it in some bushes near a green electrical box.

"Meanwhile ground units had continued surveillance on Richard. After returning to the Thrifty shopping mall, Richard parked in front of a liquor store, opened the hood of his car, and proceeded to walk to the area of a telephone booth and make a call. Richard then walked to his car, closed the hood, and returned to the pay phone. Police could not determine whether Richard was making or receiving telephone calls.

"Eventually, Richard returned to pick Michael up by the green electrical box near the condominium complex, near where he had dropped Michael off earlier. The green electrical box was visible from Richard's position at the Thrifty shopping center. At this time, Richard was driving back and forth slowly in the area of the electrical box apparently waiting for Michael.

"Michael came out of some bushes near the electrical box and began to look up and down the street. Michael jogged down the street until he met Richard's car. The two men drove over to the bushes and Michael retrieved the VCR. Shortly thereafter, the police intercepted the vehicle and arrested Richard and Michael Durant.

"Police searched Richard's car and found Menser's VCR and remote control in a bag in the back seat and a bag containing seven cans of Coca-Cola. A search of the engine compartment revealed a cosmetic bag containing a hypodermic needle, spoon, lighter, razor blade, cotton swab, and two pieces of aluminum foil, each containing a substance later determined to be heroin. The net weight of both packages was .06 grams."

*Facts at Resentencing*:

On remand, after considering the original sentencing data, Durant's supplemental sentencing memorandum and attachments, and hearing argument, the court exercised its discretion not to strike any of Durant's 13 prior convictions under *Romero*. Before defense counsel began arguing Durant's alternative motion to exercise its discretion to run his count 2 and 3 attempted burglaries concurrently with his count 1 burglary, the court stated: "I think I'm persuaded that under the *Hendrix* [*supra*, 16 Cal.4th 508] case and other cases, and the language of the [three strikes] statute itself, I think I'm persuaded there would be a basis for the court finding that mandatory consecutive sentencing is not mandatory in this case. It was the same occasion, and essentially arose out of the same set of facts. . . . I don't think I'm mandated to impose consecutive sentencing under the strike law."

Defense counsel asked the court to consider the same factors that were argued regarding the court's discretion to strike a prior to exercise its discretion to impose concurrent rather than consecutive terms. Counsel stressed Durant's changed behavior and attitude during this period of incarceration as compared to his former periods of confinement, his age, his family support and the sufficiency of punishment and protection for society by an indeterminate term of 30 years to life in this case. Counsel also stated: "[T]here was one singular intent and purpose here, and that was to steal something from a residence in order that [Durant] could then take that merchandise to a pawnshop to sell. The first two homes he was not able to get into. When he was able to enter the third home he did in fact take the VCR and the cokes and he left. He didn't then go to the other houses. He didn't go back to the first two. He didn't attempt any other houses. [¶] He signaled his brother, as I recall the facts, got the goods, they got in the car, and they were leaving the area when they were apprehended. So I think that is significant, in that it shows that was truly his intent; he was going to burglarize a house to get something to pawn, when he realized that intention he stopped and he left. If he had been able to burglarize the first house that would have been the end of it."

The court expressed its discomfort with making such an assumption about Durant's intent, but acknowledged it was a reasonable argument to make.

The court was concerned because the crimes involved separate victims and separate homes, and "concurrent sentencing, arguably, doesn't adequately or reasonably take into account the assault, if you will, upon the residents or the castle of three different individual parties."

After considering the comments of counsel, the court concluded: "I just don't think . . . it does impermissible violence or unreasonable violence to . . . the language of the code to find that this case comes within the language of exception that is the same occasion and arises out of the same set of operative facts. So that's my finding, that's my conclusion, that this comes within the language of exception of the evidence [*sic*] code, therefore I'm not mandated to impose consecutive sentencing."

After further consideration, the court stated, "I think I'm satisfied that in the conscious exercise of discretion, which I think I have, that concurrent sentencing is appropriate . . . for the three counts." It then imposed the 30-year-to-life term from which the People have appealed.

## DISCUSSION

The parties agree this appeal is only proper under section 1238, subdivision (a)(10)[6] if we conclude the trial court imposed an unlawful sentence because it chose to impose a concurrent term when the applicable three strikes statute requires the imposition of a consecutive term. The parties also do not dispute that the applicable portions of the three strikes law in this case are subdivisions (a)(6), (7) and (c)(2)(B) of section 1170.12.[7] ▇▇▇ Nor

---

[6]Section 1238 provides in pertinent part that: "(a) An appeal may be taken by the people from any of the following: [¶] . . . [¶] (10) The imposition of an unlawful sentence, . . . except that portion of a sentence imposing a prison term which is based upon a court's choice that a term of imprisonment . . . be consecutive or concurrent to another term of imprisonment, unless an applicable statute requires that the term be consecutive."

[7]Because Durant was convicted of burglary and two attempted burglaries, all serious felony offenses under the three strikes law, he is subject to sentencing under section 1170.12, subdivisions (a)(6), (7) and (c)(2)(B).

Section 1170.12, subdivision (a)(6) provides: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to this section."

Section 1170.12, subdivision (a)(7) states: "If there is a current conviction for more than one serious or violent felony as described in paragraph (6) of this subdivision, the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law."

Section 1170.12, subdivision (c)(2)(B) provides that "The indeterminate term described in subparagraph (A) of paragraph (2) of this subdivision shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law. Any other term

do they have any disagreement with the Supreme Court's interpretation of these provisions in *Hendrix* that "when a defendant is convicted of two or more current serious or violent felonies 'not committed on the same occasion, and not arising from the same set of operative facts,' not only must the court impose the sentences for these serious or violent offenses consecutive to each other, it must also impose these sentences 'consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.' By implication, consecutive sentences are not mandated under subdivision (c)(7) if all of the serious or violent current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.' " (*People* v. *Hendrix, supra,* 16 Cal.4th at p. 513; see § 667, subd. (c)(7).)

The parties further agree that the Supreme Court in *Deloza* determined the "same occasion" requirement "refers at least to a close temporal and spatial proximity between the acts underlying the current convictions" (*People* v. *Deloza, supra,* 18 Cal.4th at pp. 595, 599) and that "the analysis for determining whether subdivision (a)(6) and (a)(7) [of section 1170.12] requires consecutive sentencing is not coextensive with the analysis for determining whether section 654 permits multiple punishment." (*People* v. *Deloza, supra,* at p. 595.)

■ Rather, the parties only dispute whether the evidence reveals Durant's current crimes were committed on different occasions and arose out of different facts. The People contend the record shows the three crimes in this case were not committed on the same occasion and did not arise from the same set of operative facts while Durant asserts the evidence shows he committed all the offenses at the same location (a housing complex), against the same group of victims (the persons in the housing complex he burglarized), and the offenses occurred in immediate succession without intervening events. Alternatively, Durant argues if we find his current crimes did not occur on the "same occasion," that they "arose from the same set of operative facts"—his plan to steal something he could sell to obtain money for food from the first house he could enter.

In conformance with the holdings in *Hendrix* and *Deloza,* the rules of statutory construction and a review of case authorities, we narrowly interpret the agreed upon pertinent phrases "committed on the same occasion" and "arising from the same operative facts" to include the additional factors of the nature and elements of the current offenses and conclude the trial court

imposed subsequent to any indeterminate term described in subparagraph (A) of paragraph (2) of this subdivision shall not be merged therein but shall commence at the time the person would otherwise have been released from prison."

erroneously evaluated the facts in light of the law to impose an unlawful sentence.[8] We explain.

In *People v. Bell* (1998) 61 Cal.App.4th 282 [71 Cal.Rptr.2d 415] this court concluded in light of *Hendrix* that ". . . where a defendant *simultaneously* commits several serious or violent felonies, the felonies will be considered to have occurred on the same occasion." (*Id.* at p. 294, italics added.) In so doing, we noted that because the majority in *Hendrix* had phrased the issue as " 'whether consecutive sentences are mandatory under [section 667,] subdivision (c)(6), (c)(7), or subdivision (e)(2)(B), when the defendant has two or more prior felony convictions within the meaning of [section 667,] subdivision (d), and commits serious or violent felonies against multiple victims *at the same time*' " (*id.* at pp. 293-294, citing *People v. Hendrix, supra,* 16 Cal.4th at p. 511, fn. omitted, italics added), that it appeared ". . . the majority is taking the position that where a defendant commits multiple current crimes simultaneously, they necessarily arise from the same set of operative facts or are committed on the same occasion for the purposes of this action." (*Id.* at p. 294.)

Subsequently, in *Deloza* our Supreme Court noted, "[n]othing in either the language of subdivision (a)(6) and (a)(7) [of section 1170.12] or its legislative history suggests the electorate intended [the words 'same occasion'] to have a special or peculiar import different from their ordinary, generally understood meaning." (*People v. Deloza, supra,* 18 Cal.4th at p. 594.) ▬ Thus, the court stated: "The phrase 'committed on the same occasion' is commonly understood to refer to at least a close temporal and spatial proximity between two events, although it may involve other factors as well. Making mandatory consecutive sentences for those current crimes committed on *different* occasions is consistent with the focus of the three

---

[8]The parties dispute the standard of our review. Durant contends we must affirm the trial court's ruling if it is supported by substantial evidence. (*People v. McKee* (1995) 36 Cal.App.4th 540, 545-546 [42 Cal.Rptr.2d 707], disapproved on another point in *People v. Deloza, supra,* 18 Cal.4th at p. 600, fn. 10.) The People assert the appeal presents a question of law or a predominately legal mixed question of law and fact which is subject to de novo review. (*People v. Gordon* (1990) 50 Cal.3d 1223, 1242-1243 [270 Cal.Rptr. 451, 792 P.2d 251].) We need not resolve this issue as we find consecutive sentencing was statutorily required under the facts of this case.

Moreover, although we have taken judicial notice of two pages from the San Diego County Thomas Guide as requested by the People, we do not base our decision on such materials. Those pages were not before the trial court either at trial or at the pertinent sentencing hearing. We note, however, that the probation officer's reported description of the crimes that occurred at different residences on different streets of the housing complex, in addition to the record at trial that was before the sentencing judge (who was also the trial judge), is sufficient from which time and distance can be inferred for purposes of our review.

strikes law, which is recidivism. [Citations.] [¶] Accordingly, we conclude there are certain crimes that are 'committed on the same occasion,' such as committing a violent crime against multiple victims, for which subdivision (a)(6) and (a)(7) [of section 1170.12] does not mandate consecutive sentencing, even though section 654 does not preclude multiple punishment." (*People* v. *Deloza, supra,* at pp. 594-595, original italics.)

In *Deloza,* the multiple crimes committed by the defendant occurred "essentially simultaneously against the same group of victims" when he entered a furniture store, robbed four people and left. (*People* v. *Deloza, supra,* 18 Cal.4th at p. 595.) Because of the apparent brief duration of the commission of the crimes in the one location, the court had no problem with finding such "close temporal and spatial proximity" of the offenses constituted the "same occasion." (*Id.* at p. 596.) Thus, as in *Hendrix,* where the parties had stipulated the multiple robberies there had been committed on the same occasion, the court did not need to elaborate on the ordinary meaning of "same occasion" or construe the language "arising from the same set of operative facts." (*Ibid.; People* v. *Hendrix, supra,* 16 Cal.4th at p. 514.)

Although the court in *Deloza* did not address what "additional factors may be found relevant in defining the precise parameters of [the phrase 'same occasion'] in future cases" (*People* v. *Deloza, supra,* 18 Cal.4th at p. 596, fn. omitted), it discussed several points that are instructive. (*Id.* at pp. 596-599.) At the outset, it noted that "the phrase 'same occasion' in subdivision (a)(6) and (a)(7) [neither parallels] the language of section 654, which refers to an 'act or omission,' [n]or the language of cases interpreting section 654, which refer to an indivisible course of conduct and the defendant's intent and objective. [Citations.]" (*People* v. *Deloza, supra,* at p. 594.)

Also, in commenting on an alternative interpretation of the term "same occasion" posited by the Attorney General, which equated it with the meaning of the term "separate occasions" in section 667.6, subdivision (d), the court in *Deloza* noted ". . . it is not clear how helpful the term 'separate occasions' . . . is in interpreting the phrase 'not committed on the same occasion'" (*People* v. *Deloza, supra,* 18 Cal.4th at p. 597) because other statutes, including the Penal Code, have used such term inconsistently. (*Id.* at pp. 596-599.) While the court in *Deloza* cautioned that any definition of the "separate occasions" language under section 667.6, subdivision (d) would be "of only marginal assistance under these circumstances in construing the meaning of the phrase 'not committed on the same occasion'" (*People* v.

*Deloza, supra,* at p. 599),[9] it explained the use of such lanugage in former section 186.22, subdivision (e), concerning the definition of a "pattern of criminal gang activity" which used the term "separate occasions"[10] (*People v. Deloza, supra,* at p. 598), "appeared to make a distinction between crimes occurring seconds apart and involving two assailants . . . and crimes not in close temporal and spatial proximity to one another. [Citation.]" (*Id.* at p. 599.)

On the other hand, one California Court of Appeal addressed the "separate occasions" language used in section 667.6, subdivision (d) (*People v. Newsome* (1997) 57 Cal.App.4th 902 [67 Cal.Rptr.2d 438]), and found it similar to the "same occasion" language in section 667, subdivision (c)(7). (*People v. Newsome, supra,* at p. 912.) From such phrase it concluded the Legislature knew how to enact statutes to require mandatory consecutive terms when there were separate victims involved. (*Ibid.*) Because of the absence of any reference to "separate victims" in section 667, subdivision (c)(7), the court in *Newsome* concluded the "same occasion[/]same set of operative facts" language pertains only to "the timing of the current crimes, not other issues of culpability," which are left to the sentencing court's discretion in determining whether to impose consecutive terms. (*People v. Newsome, supra,* at p. 913.) In *Newsome,* the court found the trial court had correctly imposed mandatory consecutive terms for two acts of threatening witnesses which occurred on separate occasions, one in court and the second in a holding area outside the court (*id.* at p. 911), but remanded for resentencing so the court "may exercise its discretion as to imposing consecutive or concurrent sentences on the [three current] robbery convictions" that occurred on the "same occasion." (*Id.* at p. 915.) The court in *Newsome,* like the court in *Deloza,* found the language of section 654 inapplicable to the determination of whether consecutive terms for multiple current felony convictions are mandatory under section 667, subdivision (c)(7). (*People v. Newsome, supra,* at p. 913.)

Because the multiple current crimes at issue in *Hendrix, Deloza, Newsome* and *Bell* were committed in such a close time and space as to have occurred almost simultaneously, those reviewing courts were not required to go beyond the ordinary, generally understood meaning of the phrase "same occasion" to find the trial court retained the discretion to impose either

[9]Although we do not use such here, we do not read *Deloza* as foreclosing the possibility the definition of the "separate occasions" language under section 667.6, subdivision (d) might be of some assistance in some future case. (See *People v. Deloza, supra,* 18 Cal.4th at p. 599.)

[10]Former section 186.22, subdivision (e), provided that a " ' "pattern of criminal gang activity" ' means the commission, attempted commission, or solicitation of certain offenses, 'provided . . . the offenses are committed on separate occasions, or by two or more persons.' " (*People v. Deloza, supra,* 18 Cal.4th at p. 598, fn. 9.)

concurrent or consecutive sentences as to such crimes. ▉ However, when the current multiple crimes are not committed so closely in time and proximity, so that they occurred at times separated by more than seconds, and in separate places, and they involved different victims, as in this case, the question becomes what additional factors are involved in determining whether consecutive terms are mandatory? To answer this query, we turn to the language of the statute, specifically to the conjunctive phrase of section 667, subdivision (c)(6) and (7) that the offenses arose from "the same set of operative facts" since such is not necessarily duplicative of the term "same occasion" and affects the determination of whether consecutive terms must be imposed.

We are aware the phrase "the same set of operative facts" has been judicially interpreted in collateral estoppel and election of remedies cases to refer to those facts which prove a criminal or civil defendant's liability for a particular wrongful act. (*People* v. *Nunez* (1986) 183 Cal.App.3d 214, 221 [228 Cal.Rptr. 64]; *General Ins. Co.* v. *Mammoth Vista Owners' Assn.* (1985) 174 Cal.App.3d 810, 828 [220 Cal.Rptr. 291]; *People* v. *Superior Court* (*Jackson*) (1975) 44 Cal.App.3d 494, 502 [118 Cal.Rptr. 702].) ▉ Generally, "[w]here the language of a statute uses terms that have been judicially construed, ' "the presumption is almost irresistible" ' that the terms have been used ' "in the precise and technical sense which had been placed upon them by the courts." ' [Citations.] This principle applies to legislation adopted through the initiative process. [Citation.]" (*People* v. *Weidert* (1985) 39 Cal.3d 836, 845-846 [218 Cal.Rptr. 57, 705 P.2d 380].) While we have not found this exact phrase construed in other statutes, it has often been used by courts to refer to the facts of a case which prove the underlying act upon which a defendant had been found guilty. This meaning comports with the finding made by the court in *People* v. *Martin* (1995) 32 Cal.App.4th 656, 663-664 [38 Cal.Rptr.2d 776], disapproved on another point in *People* v. *Deloza, supra,* 18 Cal.4th at page 600, footnote 10, that although ". . . the term 'operative facts' has not always been used in precisely the same way [citations], [the court] believe[d] that in section 667, subdivision (c)(6) [such term] relates to the facts underlying the current charged offenses." (*People* v. *Martin, supra,* at pp. 663-664.) We agree and thus believe that consistent with its common usage the enactors of sections 667, subdivisions (b) through (i) and 1170.12 used the phrase "the same set of operative facts" with such general meaning in mind.

In applying this definition to any particular case, the nature and elements of the current charged offense becomes highly relevant. For example, when a robbery is charged, its continuous nature, its elements and the facts used to support those elements are the "operative facts" underlying the commission

of that crime. If another offense is committed while the facts underlying that robbery are unfolding, it will necessarily arise from the same set of operative facts as the original robbery. However, where the elements of the original crime have been satisfied, any crime subsequently committed will not arise from the same set of operative facts underlying the completed crime; rather such crime is necessarily committed at a different time. For instance, with the crime of burglary, where the offense is complete when there is an entry into a structure with felonious intent, "regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed" (*People* v. *Montoya* (1994) 7 Cal.4th 1027, 1041-1042 [31 Cal.Rptr.2d 128, 874 P.2d 903]), the commission after the first burglary of a crime or burglary of another structure necessarily will arise out of different operative facts than those underlying the original offense. ■ We therefore believe the elements and nature of a charged crime as being continuous or complete as defined for purposes of prosecution are additional factors the court must consider in determining whether multiple current crimes were committed on the "same occasion" and arose from the "same set of operative facts" when the offenses are committed more than seconds apart.

Although consideration of such additional criteria may limit the cases in which a defendant might benefit from the trial court's discretionary determination of whether to impose concurrent rather than consecutive terms, under the three strikes law such narrow construction is consistent with the enactor's intent to "ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (§ 667, subd. (b); *People* v. *Newsome, supra,* 57 Cal.App.4th at p. 913.) As the court in *Deloza* noted, such interpretation comports with the three strikes law's focus of recidivism by "[m]aking mandatory consecutive sentences for those current crimes committed on *different* occasions[.]" (*People* v. *Deloza, supra,* 18 Cal.4th at p. 594, original italics.) Such consideration is also consistent with the concept of "the timing of the current crimes" noted by the court in *Newsome* (*People* v. *Newsome, supra,* 57 Cal.App.4th at p. 913); e.g., whether the first current crime is complete or continues when the next current crime is committed is certainly within the concept of duration or "timespan" of the original crime, or its "temporal threshold for establishing guilt, i.e., when the offense is complete for purposes of prosecution. [Citation.]" (*People* v. *Washington* (1996) 50 Cal.App.4th 568, 578 [57 Cal.Rptr.2d 774].)

■ Applying the above described additional factors in the context of the present case, we conclude Durant committed three separate offenses, two attempted burglaries which by their nature and elements were completed

before he committed a burglary. The crimes did not occur on the "same occasion" as that term is commonly understood. Nor did the duration of the crimes overlap, each being complete when Durant attempted to enter or successfully entered a residence and then left to go to another residence. (See *People* v. *Montoya, supra,* 7 Cal.4th at pp. 1046-1047 ["the duration of a burglary, for the purpose of aider and abettor liability, extends until the perpetrator's departure from the structure"].)

Our review of the record reveals the resentencing in this case was conducted after the decision in *Hendrix* but before the decision in *Deloza.* Not having the wisdom of the court in *Deloza,* the trial court appears to have determined it had the discretion to impose concurrent terms by finding the defense argument reasonable that the two attempted burglaries and the burglary committed by Durant occurred during one criminal course of conduct according to Durant's presumed "single" intent or plan to steal something and then leave the housing complex. To reach this conclusion, however, the court necessarily relied upon an analysis using the language of cases interpreting section 654, which is specifically condemned in *Deloza.* (*People* v. *Deloza, supra,* 18 Cal.4th at p. 594.)

Because there is no direct evidence in the record of such an intent to only take from one place, we find the argument Durant would have stopped after doing so to be wholly speculative, since he could have also decided to press his luck further after hitting one house successfully in the same general area. Although intent may be a factor to consider under certain circumstances, here it is of limited value because the general intent to steal to obtain money is so broad and inclusive. (See *People* v. *Washington, supra,* 50 Cal.App.4th at pp. 577-578.) Such intent can apply to one theft or to a series of bank robberies or burglaries which are committed for the purposes of obtaining money, regardless of when and where they are committed. Clearly, the fact a person robs several liquor stores at different times and locations on the same day while harboring the same intent of obtaining money does not compel a finding each robbery arose out of the same operative facts. Similarly, the commission of one robbery of a store a day for several days to obtain money would not be crimes committed on the same occasion or arise out of the same operative facts.

Interestingly, at the original sentencing, which was closer to the time of trial, the court did not agree with counsel's argument Durant would have stopped "at just one" crime had he been able to obtain something of value to

■■■■■■■■■■■■

sell for money from the first house in the complex.[11] Without the court's improper analysis at resentencing, it would have been required to impose consecutive sentences based on the evidence in this case. Not having done so, the court imposed an unauthorized sentence.

Contrary to Durant's reliance on the recent case of *People* v. *Hall* (1998) 67 Cal.App.4th 128 [79 Cal.Rptr.2d 690], the facts in this case are clearly distinguishable. There, as compared to here, the sentencing judge had no evidence from which he could determine whether the current crimes occurred on the "same occasion" and arose "from the same set of operative facts." (*Id.* at p. 139.) In addition, the nature and elements of the crimes involved in *Hall* were completely different than those in this case. (*Id.* at pp. 139-141.)

In sum, we conclude the People's appeal is proper and the unauthorized sentence must be vacated and the matter remanded so an authorized sentence may be imposed.[12]

## DISPOSITION

The judgment is reversed with respect to the sentence imposed and remanded for further proceedings consistent with the views expressed in this opinion.

Benke, Acting P. J., and Nares, J., concurred.

On February 3, 1999, the opinion was modified to read as printed above.

---

[11]At the original sentencing, the court found consecutive terms proper and mandatory under the three strikes law because Durant had committed three separate crimes against the interests of three different victims.

[12]Because the record is confusing as to whether the trial court denied the motion to strike because it erroneously believed it had discretion to impose concurrent terms for Durant's current convictions, on remand the court will have yet another opportunity to address that issue in light of *People* v. *Williams* (1998) 17 Cal.4th 148 [69 Cal.Rptr.2d 917, 948 P.2d 429].