MOSK, J.
I concur in the judgment.
Consecutive sentencing is mandatory under the “Three Strikes” law,[1] to the exclusion of concurrent sentencing, when a perpetrator is convicted of multiple felonies that were “not committed on the same occasion” and did “not aris[e] from the same set of operative facts.” (Pen. Code, §§ 667, subd. (c)(6), 1170.12, subd. (a)(6).)
By contrast, consecutive sentencing is permissive under the Three Strikes law, together with concurrent sentencing, when the perpetrator is convicted of multiple felonies that were “committed on the same occasion” or “[arose] from the same set of operative facts.” (Pen. Code, §§ 667, subd. (c)(6), 1170.12, subd. (a)(6).)
*235 Hence, what is material under the Three Strikes law’s rule of mandatory or permissive consecutive sentencing is whether the perpetrator’s multiple felonies were committed on the “same occasion” or arose from the “same set of operative facts.” If either on the “same occasion” or from the “same set of operative facts,” then he may, but need not, be sentenced consecutively. If neither on the “same occasion” nor from the “same set of operative facts,” then he must be sentenced consecutively.
The question before us is, What is the meaning of the Three Strikes law’s rule of mandatory or permissive consecutive sentencing? That it is difficult can hardly be doubted. If any proof is needed, it may be found in the efforts reflected in both the majority and dissenting opinions.
In attempting to give my own answer to the question of the meaning of the Three Strikes law’s rule of mandatory or permissive consecutive sentencing, I start from two premises, one about law and the other about language.
The first premise is this: In making law, one acts for a purpose. (See, e.g., Fuller, Positivism and Fidelity to Law—A Reply to Professor Hart (1958) 71 Harv. L.Rev. 630, 661-669; see also Cabell v. Markham (2d Cir. 1945) 148 F.2d 737, 739 (per Hand, J.) [stating that “statutes always have some purpose ... to accomplish”], affd. sub nom. Markham v. Cabell (1945) 326 U.S. 404 [66 S.Ct. 193, 90 L.Ed. 165]; see generally Jhering, Der Zweck im Recht (4th ed. 1904-1905).) Hence, any law is a means to an end. (See generally 1 Jhering, Der Zweck im Recht (4th ed. 1904), translated sub nom. Law as a Means to an End (Husik trans1. 1913).)
The second premise is this: In using language, one employs text in a context and not in isolation, the narrower context comprising each and all of the words employed to constitute an expression, the broader context embracing the world at large in which these words are employed. (See generally United States v. Lennox Metal Manufacturing Co. (2d Cir. 1955) 225 F.2d 302, 307-315 (opn. of Frank, J.); Fuller, Positivism and Fidelity to Law—A Reply to Professor Hart, supra, 71 Harv. L.Rev. at pp. 661-669; cf. Kopp v. Fair Pol. Practices Com. (1995) 11 Cal.4th 607, 672-673 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (cone. opn. of Mosk, J.) [dealing with the use of language in a statute].) In themselves, words have no meaning; they are given it by their users. (United States v. Lennox Metal Manufacturing Co., supra, 225 F.2d at p. 313 (opn. of Frank, J.).) Therefore, to attempt to find a word’s meaning by looking solely within a dictionary and not at all outside its pages is futile. (See Kopp v. Fair Pol. Practices Com., supra, 11 Cal.4th at p. 673 (cone. opn. of Mosk, J.); United States v. Lennox Metal Manufacturing Co., supra, 225 F.2d at pp. 310-311 (opn. of Frank, J.); see also Cabell v. *236 Markham, supra, 148 F.2d at p. 739 (per Hand, J.) [stating that “it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary”].) One who makes such an attempt fools himself—or is intent on fooling others.
From these two premises it follows that a law derives its meaning from its language in its context, in light of its purpose. Although a word in a law may be “plain,” its meaning may be altogether otherwise. (See United States v. Monia (1943) 317 U.S. 424, 431 [63 S.Ct. 409, 412, 87 L.Ed. 376] (dis. opn. of Frankfurter, J.) [stating that the “notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification”].) Certainly, meaning does not follow word, as it were, step by step, like the shadow of a man who walks toward a bright afternoon sun. To cite Professor Fuller’s illustration, the word “sleep” in the law, “It shall be a misdemeanor ... to sleep in any railway station,” is “plain” in and of itself. (Fuller, Positivism and Fidelity to Law—A Reply to Professor Hart, supra, 71 Harv. L.Rev. at p. 664.) But, as Professor Fuller himself demonstrates, the law’s meaning is not. What of the “passenger” who is “waiting at 3 A.M. for a delayed train,” is “sitting upright in an orderly fashion,” but is “heard . . . to be gently snoring”—does he “sleep” in violation of the law? (Ibid.) Or what of the “man” who has “brought a blanket and pillow to the station” and has “obviously settled himself down for the night,” but has not yet “had a chance to go to sleep”—does he “sleep” in violation of the law? (Ibid.) Unable to give a ready answer to either of these questions, we might nevertheless insist almost spontaneously that the “disheveled tramp, spread out in an ungainly fashion on one of the benches of the station, keeping weary passengers on their feet and filling their ears with raucous and alcoholic snores,” must surely “sleep” in violation of the law. (Ibid.) We might indeed be correct. If so, we could not credit the plainness of the word “sleep” in the law, but rather the soundness of our own unconscious assumptions about both the law’s language in its context and also its underlying purpose.
Let us return to our theme.
In its context, the language of the Three Strikes law’s rule of mandatory or permissive consecutive sentencing for a perpetrator convicted of multiple felonies suggests that the rule turns on whether the perpetrator was allowed a reasonable opportunity for choice in the interim—to continue his felonious course or to bring it to an end.
Among statutes, the phrase “same occasion” appears only in the Three Strikes law. It is not there defined. Of course, “occasion” may be found in *237 many other places, with a general sense of “period of time.” Similarly, “same occasion,” with a general sense of “same period of time.” Its opposites include “separate occasion.” (Cf. Cal. Rules of Court, rule 426 [implementing Pen. Code, § 667.6, subd. (d)].) “Separate occasion” presents itself, perhaps most prominently, in a rule of full, separate, and consecutive sentencing laid down by statute for a perpetrator convicted of multiple felonies entailing “sexually assaultive behavior,” as specified (Pen. Code, § 667.6, subd. (d))—a rule that obtained at the time of the enactment of the Three Strikes law and obtains still today. In this provision, “occasions” are effectively defined as “separate” if they allow the perpetrator convicted of multiple felonies within its coverage a reasonable opportunity for choice in the interim.[2] Here, an “occasion” may be understood to be the “same” if it denies the perpetrator convicted of multiple felonies a like opportunity.
Among statutes, the phrase “same set of operative facts” also appears only in the Three Strikes law. It too is not there defined. “Set of operative facts” is not found in many other places. But it is indeed found injudicial decisions dealing with the relation-back doctrine (e.g., Barrington v. A.H. Robins Co. (1985) 39 Cal.3d 146, 150 [216 Cal.Rptr. 405, 702 P.2d 563]), the rule against nonduplicative pleading (e.g., Lutz v. De Laurentiis (1989) 211 Cal.App.3d 1317, 1324 [260 Cal.Rptr. 106]), loosely referred to under the rubric of “election of remedies” {People v. Durant (1999) 68 Cal.App.4th 1393, 1405 [81 Cal.Rptr.2d 207]), and the doctrine of collateral estoppel {People v. Superior Court {Jackson) (1975) 44 Cal.App.3d 494, 502 [118 Cal.Rptr. 702]). In these decisions, a “set of operative facts” is effectively defined as the “same” for multiple causes of action or criminal charges if it comprises a single group of common facts. Here, a “set of operative facts” may likewise be understood to be the “same” for a perpetrator’s multiple felonies if it comprises a single group of common facts. The commonality of such facts will apparently deny the perpetrator a reasonable opportunity for choice in the interim, inasmuch as it will apparently deny him any “interim” within which to choose.
The purpose of the Three Strikes law’s rule of mandatory or permissive consecutive sentencing for a perpetrator convicted of multiple felonies also *238 suggests that the rule turns on whether he was allowed a reasonable opportunity for choice in the interim.
The purpose of this rule is, manifestly, to treat otherwise similarly situated perpetrators convicted of multiple felonies dissimilarly—specifically, to treat the perpetrator who did not commit his felonies on the “same occasion” and whose felonies did not arise from the “same set of operative facts” more harshly than the perpetrator who did commit his felonies on the “same occasion” or whose felonies did arise from the “same set of operative facts,” and to do so by denying the former but not the latter any possibility of concurrent sentencing.
The underlying assumption is that the perpetrator convicted of multiple felonies who did not commit his felonies on the “same occasion” and whose felonies did not arise from the “same set of operative facts” is more blameworthy than the perpetrator of multiple felonies who did commit his felonies on the “same occasion” or whose felonies did arise from the “same set of operative facts.”
As a general matter, a perpetrator’s blameworthiness is dependent on his conduct (including its consequences) and his mental state. (See, e.g., 1 LaFave & Scott, Substantive Criminal Law (1986) Characteristics of the Substantive Criminal Law, § 1.2, pp. 8-11.)
The greater blameworthiness of the perpetrator convicted of multiple felonies who did not commit his felonies on the “same occasion” and whose felonies did not arise from the “same set of operative facts” cannot be attributed to more blameworthy conduct. By definition, the particular conduct underlying his felonies is immaterial for present purposes.
Rather, the greater blameworthiness of the perpetrator convicted of multiple felonies who did not commit his felonies on the “same occasion” and whose felonies did not arise from the “same set of operative facts” must be attributed to a more blameworthy mental state. And such more blameworthy mental state must, apparently, be attributed to the fact that he was indeed allowed a reasonable opportunity for choice in the interim—and chose not to bring his felonious course to an end but rather to continue therein.
In light of the foregoing, I conclude that a perpetrator convicted of multiple felonies committed his felonies on the “same occasion” when, and only when, he committed them within a period of time that denied him a *239 reasonable opportunity for choice in the interim.[3] I likewise conclude that his felonies arose out of the “same set of operative facts” when, and only when, they arose out of a single group of common facts, whose commonality denied him a reasonable opportunity for choice in the interim by denying him any “interim” within which to choose.
Turning now to the case at bar, I am of the view that the facts relevant for our purposes are generally as stated in the majority opinion.
I believe that the facts establish that appellant did not commit his felonies on the “same occasion.” On one, he engaged in petty theft against the Stater Brothers market, having previously suffered a theft-related conviction. On another, he assaulted Elizabeth LaVastida with a deadly weapon. It is true that he did the one and then the other one close in time. But he had a reasonable, albeit not an extensive, opportunity for choice in the interim.
I also believe that the facts establish that appellant’s felonies did not arise from the “same set of operative facts.” It is not the case that there was a single group of common facts for both the theft and the assault. Hence, it is not the case that there was a commonality of facts that denied him a reasonable opportunity for choice in the interim by denying him any “interim” within which to choose. Rather, as stated, he did indeed have the requisite reasonable, if not extensive, opportunity.
In conclusion, having made the determinations indicated above, which are contrary to those of the Court of Appeal, I join the majority in reversing its judgment.

The Three Strikes law consists of each of two separate statutes. (People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 504 [53 Cal.Rptr.2d 789, 917 P.2d 628].) In their provisions generally, they are “nearly identical.” (Ibid.) In the specific provisions with which we are here concerned, they are identical without qualification.

Penal Code section 667.6, subdivision (d), provides in pertinent part: “A full, separate, and consecutive term shall be served for each” conviction of a felony entailing “sexually assaultive behavior,” as specified, “if the crimes involve separate victims or involve the same victim on separate occasions, In determining whether crimes against a single victim were committed on separate occasions . . . , the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

Whether or not a perpetrator convicted of multiple felonies committed his felonies on the “same occasion” properly demands consideration of time rather than space. Space, however, may be involved as well as time. (See People v. Deloza (1998) 18 Cal.4th 585, 595 [76 Cal.Rptr.2d 255, 957 P.2d 945].) But only, apparently, as it relates thereto.