[No. B139842. Second Dist., Div. Five. Jan. 29, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY JENKINS, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B. and C. of the Discussion.

700

## COUNSEL

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Steven D. Matthews and Paul M. Roadarmel, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## WEISMAN, J.*—

### I. INTRODUCTION

Defendant Larry Jenkins appeals from a judgment following a bifurcated trial. The jury found defendant guilty of attempted willful, deliberate, and premeditated murder of Arlisa Coleman (Pen. Code, §§ 664, 187, subd. (a); count 1), and further found that defendant personally used a deadly and dangerous weapon (knife) during the commission of the attempted murder (Pen. Code, § 12022, subd. (b)(1)). The jury also found defendant guilty of first degree residential burglary (Pen. Code, § 459; count 2), assault by means likely to produce great bodily injury on Jamila Coleman (Pen. Code, § 245, subd. (a)(1); count 3), and making terrorist threats (Pen. Code, § 422; count 4). Defendant waived trial by jury on the truth of allegations that he had previously suffered two convictions for armed robbery (Pen. Code, § 211), and one conviction for burglary (Pen. Code, § 459), each of which constituted a serious felony (Pen. Code, § 667, subd. (a)(1)), that each of the three prior convictions constituted a "strike" under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and that he had previously served a separate prison term for the same three prior convictions (Pen. Code, § 667.5, subd. (b)). The trial court found each of the allegations concerning the prior convictions to be true. Defendant was sentenced to a total term in prison of 66 years to life. On count 1, he was sentenced to 25 years to life in prison under the Three Strikes law pursuant to Penal Code section 1170.12, subdivision (c)(2)(A)(ii), plus one year for the use of a deadly weapon enhancement, and an additional five years for each of the three prior serious felony conviction enhancements. On count 3, the trial court imposed a consecutive term of 25 years to life. The trial court also

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

imposed 25-year-to-life sentences on counts 2 and 4, but ordered them stayed. The trial court also struck each of the prior prison term enhancements. Defendant contends the matter must be remanded for a new sentencing hearing because the trial court: (1) was unaware it had discretion to sentence defendant concurrently on counts 1 and 3 because those offenses were committed on the same occasion and arose from the same set of operative facts; (2) made inconsistent statements during sentencing when it stated at one point that defendant's minimum sentence on count 1 was tripled by operation of the Three Strikes law (which would total 21 years to life), and when the trial court stated at another point that the sentence on count 1 was 25 years to life; and (3) erred when it stated it was staying sentence on counts 2 and 4 pursuant to Penal Code section 1170.12, since the stay was actually mandated by Penal Code section 654. We find that the offenses in counts 1 and 3 were not committed on the same occasion and did not arise from the same operative facts, so the trial court did not have discretion to sentence concurrently on those counts. We also find that the trial court was required to sentence defendant to 25 years to life on count 1, since that was a greater sentence than the 21-year-to-life sentence that would have resulted from tripling the seven-year minimum sentence on the attempted murder, and the law requires that the greater sentence be imposed. We further find that Penal Code section 654, rather than Penal Code section 1170.12, required the stay of sentence on counts 2 and 4. We will therefore order that the abstract of judgment be amended to strike all language indicating that the minimum sentence on count 1 was tripled by operation of law, and to reflect instead the trial court's correct statement that defendant was sentenced to 25 years to life on count 1 pursuant to the Three Strikes law, with sentence on counts 1 and 3 ordered to run consecutively. The abstract should also be amended to reflect that the sentences on counts 2 and 4 were stayed pursuant to Penal Code section 654. In all other respects the judgment of conviction is affirmed.

## II. Factual Summary[1]

### A. Events Preceding the Charged Offenses

Arlisa Coleman met defendant in August of 1995. She and defendant began living together in September of 1995. Arlisa had a son named Jobari and a daughter named Jamila, and both of her children lived with her. At the time of trial in this case, Jobari was eight years old and Jamila was 16 years old. Arlisa became concerned about defendant's continuing cocaine use, his

---

[1]In accord with the usual rules on appeal, we will state the facts in the manner most favorable to the judgment. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

yelling, and his absences. In March of 1999, defendant's cocaine use resulted in a three-week hospitalization. On June 5, 1999, defendant returned home after a three-day absence and accused Arlisa of spending all of their money. Defendant demanded money from their bank account, but Arlisa told him that she did not have any money. Arlisa was worried about defendant's erratic behavior, and she moved out of their apartment later that day with her children and tried to find a new place to live. She lived with friends and family until she found a new apartment. After she moved out, defendant continued to try to contact her by pager, and when she returned his calls he sometimes threatened to press charges against her for taking his money and other times asked her to come back and said he was sorry. Eventually, he paged her from his mother's home in Louisiana. When she called him, he said he was sorry and was going to stay with his mother. Arlisa told him that she did not want to reconcile with him but wished him well.

Defendant contacted Arlisa about a week later, and told her that he had returned from Louisiana. He said his brother had been in an altercation, and as a result defendant "had to shoot some people." Arlisa became scared since she realized that defendant was capable of shooting people when he was angry. Arlisa was also informed by a doctor who was treating defendant that defendant had threatened to kill her and the doctor was legally obligated to inform her of the threat. Other doctors also contacted her from other facilities that were treating defendant to report that he had threatened her life. She was already aware that defendant was a violent person because she had personally observed him run after a neighbor with a baseball bat, and had observed him kick in her car windows when he was angry. Defendant had previously been in jail for fighting with police. Arlisa obtained a restraining order to protect herself from defendant. She never told defendant the location of her new residence.

On July 16, 1999, Arlisa and her children moved into their new apartment. On that same day, Arlisa was driving her car when she observed defendant driving a car only one block away from her new apartment. Defendant yelled at her and she left the area. Defendant followed her in his car and called her a "bitch." He pulled up next to her car at a red light and told her he had moved into her apartment building and would be seeing her.

B. *The Commission of the Charged Offenses on July 18, 1999*

1. *The Terrorist Threat (Count 4)*

On July 18, 1999, Arlisa was at her apartment with her two children. About 9:30 a.m. she went upstairs to take a shower. At that time Jamila saw

defendant kicking their car and heard the alarm going off. Jamila informed Arlisa that defendant was kicking the car, and Arlisa got out of the shower and went downstairs. Defendant yelled at Arlisa and told her she was going to die that day. He threatened to kill her and told her she was going to be "six feet under" and was going to "lie in the ground today."

### 2. The Residential Burglary (Count 2)

Defendant then approached the apartment. Arlisa told her children to lock up everything and to go upstairs to their rooms. Arlisa then heard breaking glass and saw defendant jump through a window with a knife in his hand. Defendant chased Arlisa up the stairs and she ran into her bedroom and pushed the door closed. Defendant pushed the door open a little bit and put his hand through the opening. Arlisa grabbed the knife out of defendant's hand and closed the door.

### 3. The Assault by Means of Force Likely to Produce Great Bodily Injury on Jamila (Count 3)

After defendant entered the apartment, Jamila took two knives out of a drawer for protection and went upstairs to confront defendant while her brother Jobari called 911. When Jamila got upstairs she got between defendant and the bedroom door and grabbed defendant around the waist. Defendant told her "I love you, but I gotta kill your momma." Defendant then shoved Jamila down the stairs. She fell down about 10 stairs with the two knives in her hands and one of the knives she was holding cut the palm of her hand and she also suffered a cut on her thigh. She then ran down the rest of the stairs and told her brother to go outside. The apartment manager then arrived and tried to pull Jamila outside. Jamila refused to go outside and remained in the apartment.

### 4. The Attempted Murder of Arlisa (Count 1)

After he pushed Jamila down the stairs, and after the manager arrived, defendant went down the stairs and entered the kitchen. He searched through the kitchen drawers and Jamila could hear "the drawers being rattled." Defendant then exited the kitchen with another knife in his hand. The manager tried to step in front of him to stop him, but defendant pushed the manager away. Defendant then went upstairs with the knife.

When defendant went back up the stairs, he "bumped" the door to Arlisa's bedroom and the door opened. Defendant entered the room with the knife in his hand and began stabbing Arlisa. As he stabbed her, he said, "[You're]

going to die, bitch, I'm going to kill you. You're dead. You *shouldn't have fucked me over*. I told you we should have stayed together, we could have worked this out. But you gonna die now." Arlisa was able to run out of the bedroom to the landing area. Defendant grabbed her by the arm and continued to stab her. A policeman arrived and drew his gun and ordered defendant to stop and drop the knife. Defendant dropped the knife and then said he "didn't do it." Later, after he was handcuffed, defendant was recorded as he said, "I wish I could have killed you bitch. I was going to kill you. You lucky. You lucky. Cause I was going to kill your . . . ass. For taking my money."

Arlisa was taken to a hospital for treatment and required stitches and surgery. At the time of the trial she still had scars from her wounds and had lost feeling and flexibility in her finger. She had three stab marks under her right breast as well as on her finger and her arm.

A psychiatrist testified for the defense, and described how he treated defendant in the past for depression and auditory hallucinations. He also described defendant's symptoms of posttraumatic stress disorder and paranoid ideation. He prescribed antipsychotic medication to reduce defendant's feelings of paranoia and to suppress his hallucinations. He also prescribed antidepressants to alleviate symptoms of bipolar disorder. He described how defendant's psychotic symptoms became so severe that defendant had to be placed in a locked ward in a hospital so he would not harm himself or others. Defendant was last hospitalized from June 9 to June 12, 1999.

## III.   DISCUSSION

### A.   *Consecutive Sentencing on Counts 1 and 3*

Defendant contends that the trial court was unaware it had discretion to sentence concurrently on counts 1 and 3, and argues that the matter must be remanded for a new sentencing hearing so the court can decide whether to exercise its discretion to sentence concurrently rather than consecutively. Defendant bases his contention on *People v. Lawrence* (2000) 24 Cal.4th 219, 225-234 [99 Cal.Rptr.2d 570, 6 P.3d 228], in which the court held that mandatory consecutive sentences under the Three Strikes law were required when a defendant did not commit the new offenses on the same occasion and the new offenses did not arise from the same set of operative facts. Defendant argues that in the instant case the attempted murder of Arlisa Coleman (count 1) and the aggravated assault on Jamila Coleman (count 3) were committed on the same occasion and did arise from the same set of operative facts, and therefore concurrent sentences were not

precluded. We find that the trial court had no discretion to sentence concurrently in the case at bar since the offenses at issue were not "committed on the same occasion" and did not arise from the "same set of operative facts" as those terms are used in the Three Strikes law.

In *People v. Lawrence, supra*, 24 Cal.4th at pages 225-234, the Supreme Court interpreted Penal Code section 667, subdivision (c)(6), which requires consecutive sentences for Three Strikes defendants when there are current serious or violent felony offenses which were not committed on the same occasion and did not arise from the same set of operative facts. The court found that while the term "committed on the same occasion" generally refers to a close temporal and spatial proximity between two or more events, other factors must be considered as well in making the ultimate determination on this issue. For example, the court noted that factors to be considered include but are not limited to whether the offenses were committed simultaneously against the same group of victims, whether the criminal activity was interrupted, whether there was any event that could be considered to separate one event from another event, and whether the elements of one offense have been satisfied in a manner to render that offense completed before the commission of further criminal acts constituting additional and separately chargeable crimes. (24 Cal.4th at pp. 226-229, 233.) The court further found that the term "same set of operative facts" means that the two or more separate offenses at issue must share common acts or criminal conduct that serves to establish the elements of each offense. The court specifically noted that different operative facts could well be involved in a situation where the elements of one offense were completed before the commission of other criminal acts that constituted the elements of the other separately chargeable offense or offenses, even where the different offenses occurred close in proximity and in time. (*Id.* at p. 233.) The court approved the approach taken by the reviewing court in *People v. Durant* (1999) 68 Cal.App.4th 1393, 1396-1406 [81 Cal.Rptr.2d 207], which held that distinct and completed crimes were not committed on the same occasion and did not arise from the same set of operative facts where one of the crimes was completed, because all of its elements were satisfied, before the other crime was committed, even though all of the crimes were committed at the same general location and occurred in succession.

In the case at bar, defendant assaulted Jamila at the top of the stairs while he was trying to enter the bedroom where Arlisa was located. Defendant pushed Jamila down the stairs and in so doing completed his assault on her that formed the basis of count 3. He did not then immediately proceed to continue his efforts to enter the bedroom, but rather chose to go down the stairs, go past Jamila, enter the kitchen, and rummage through the drawers to

obtain a knife. Meanwhile, the manager had entered the apartment. When defendant finally exited the kitchen after arming himself with a knife, he pushed his way past the manager and went back up the stairs. Once he arrived at the top of the stairs he proceeded to attack Arlisa with the knife.

Clearly, defendant had completed his assault on Jamila well before he stabbed Arlisa. Further, his criminal conduct was interrupted for a significant time while he went downstairs, looked for a weapon, located a weapon, armed himself with the knife, and then pushed the manager out of the way before proceeding back up the stairs, where he stabbed Arlisa. He thus went from one location on the second floor of the apartment to another location on the first floor of the apartment. His criminal conduct was further delayed while he searched for a weapon on the first floor. After he obtained a knife in the kitchen, he made a separate and intentional choice to push the manager out of the way, go back up the stairs, and try to kill Arlisa. His offenses against Jamila and Arlisa were in fact separated both in time and location, although they all occurred within the same apartment. Moreover, there were different people present during each offense. In order to stab Arlisa he had to get past the manager, who had not even arrived on the scene until after his assault on Jamila was completed. Additionally, the elements of the attempted murder of Arlisa and the assault on Jamila were different. Finally, we note that each offense was separated by a sufficient amount of time in which defendant could consider the consequences of continuing to commit new criminal acts. Under such circumstances, we find that the offenses were not committed on the same occasion and did not arise from the same set of operative facts. Thus, the trial court acted properly when it sentenced defendant to consecutive sentences on counts 1 and 3.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The clerk of the superior court is ordered to modify the abstract of judgment to delete language indicating that the minimum sentence on count 1 was tripled, and to reflect instead that the sentence on count 1 was 25 years to life pursuant to the Three Strikes law, with the sentences on counts 1 and 3 ordered to run consecutively. The clerk is further directed to modify the abstract of judgment to reflect that the sentences on counts 2 and 4 were stayed pursuant to Penal Code section 654 rather than pursuant to Penal Code section 1170.12. The clerk is then directed to forward the corrected

*See footnote, *ante,* page 699.

abstract to the Department of Corrections. The judgment is affirmed in all other respects.

Turner, P. J., concurred.

**GRIGNON, J.,** Concurring and Dissenting.—Defendant and appellant Larry Jenkins appeals from a judgment following a jury trial in which he was convicted of the burglary of the Coleman residence (Pen. Code, § 459), attempting to murder Arlisa Coleman[1] with a knife (Pen. Code, §§ 664, 187, subd. (a), 12022, subd. (b)(1)), making terrorist threats to Arlisa (Pen. Code, § 422) and assaulting by means likely to produce great bodily injury Arlisa's teenage daughter, Jamila Coleman (Pen. Code, § 245, subd. (a)(1), and a court trial in which three prior serious felony conviction allegations were found to be true (Pen. Code, §§ 1170.12,[2] 667, subd. (a)). The trial court sentenced defendant to 25 years to life for the attempted murder of Arlisa and a consecutive 25 years to life for the assault on Jamila. The trial court also sentenced defendant to 15 years for the prior serious felony conviction enhancements and one year for the weapon use enhancement. Defendant contends the trial court failed to exercise its discretion whether to impose consecutive or concurrent sentences for the attempted murder and the assault. Defendant argues the attempted murder of Arlisa and the assault on Jamila were committed on the same occasion or arose from the same set of operative facts. The majority concludes the trial court had no discretion to sentence concurrently in this case, because the two offenses were not committed on the same occasion and did not arise from the same set of operative facts. I dissent.

Penal Code section 1170.12, subdivision (a)(6) provides with respect to a three strikes defendant: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to this section." The analysis under Penal Code section 1170.12, subdivision (a)(6) is not coextensive with the analysis under Penal Code section 654. (*People v. Deloza* (1998) 18 Cal.4th 585, 591-595 [76 Cal.Rptr.2d 255, 957 P.2d 945].) Nor are the words "same occasion" necessarily closely related to the words "separate occasion" found in Penal Code section 667.6, subdivision (d). (18 Cal.4th at pp. 596-599.) Rather, the words "same occasion" have no "special or peculiar import different from their ordinary, generally understood meaning." (*Id.* at p. 594.)

---

[1]Because the two victims share the same last name, we refer to them by their first names for ease of reference and not out of any disrespect.

[2]Penal Code section 1170.12 is the legislative version of the statute enacted by initiative in Penal Code section 667, subdivisions (b)-(i).

"The phrase 'committed on the same occasion' is commonly understood to refer to at least a close temporal and spatial proximity between two events, although it may involve other factors as well." (*Ibid.*) The phrase "same occasion" is the opposite of the phrase "different occasion." (*Ibid.*)

Events have a close temporal and spatial proximity where they occur in one location, are brief in duration, are committed essentially simultaneously, are committed against the same group of victims, and occur in an uninterrupted fashion. (*People v. Deloza, supra,* 18 Cal.4th at pp. 595-596 [robbery of four persons in a furniture store]; see also *People v. Hendrix* (1997) 16 Cal.4th 508, 510-511 [66 Cal.Rptr.2d 431, 941 P.2d 64] [robbery or attempted robbery of four persons seated at a table in a mall].) Events do not have a close temporal and spatial proximity where they occur at two separate locations one to three blocks distant, are committed at two separate times two to three minutes apart, and are committed against two entirely separate groups of victims. (*People v. Lawrence* (2000) 24 Cal.4th 219, 228 [99 Cal.Rptr.2d 570, 6 P.3d 228] [theft of brandy from store, assault on nearby residents during flight].)

The phrase "not arising from the same set of operative facts" means "not sharing common acts or criminal conduct that serve[] to establish the elements of the current felony offenses of which defendant stands convicted." (*People v. Lawrence, supra,* 24 Cal.4th at p. 233.) The nature and elements of the offenses at issue, as continuous or complete, are highly relevant. (*Id.* at p. 232.) Additional factors which may be used in interpreting the phrase "same set of operative facts" include "the extent to which common acts and elements of such offenses unfold together or overlap, and the extent to which the elements of one offense have been satisfied, rendering that offense 'completed' in the eyes of the law before the commission of further criminal acts constituting additional and separately chargeable crimes." (*Id.* at p. 233.) A shoplifting theft directed at one group of victims (the employees and patrons of a market) does not arise from the same set of operative facts as assaultive conduct committed one to three blocks distant and two to three minutes later, directed at an unrelated group of victims (nearby residents) during flight from the market. (*Id.* at p. 234.) Similarly, successive burglary and attempted burglaries of apartments in a housing complex do not arise out of the same set of operative facts. (*People v. Durant* (1999) 68 Cal.App.4th 1393, 1396-1400 [81 Cal.Rptr.2d 207].)

In this case, the attempted murder of Arlisa and the assault on Jamila were committed on the same occasion and arose out of the same set of operative facts. Defendant premeditated and deliberated killing Arlisa. He intended to kill her and told her so while he was still outside the Coleman residence. To

that end, he armed himself with a knife and broke out the glass of a window in order to enter the residence occupied by Arlisa, Jamila, and eight-year-old Jobari Coleman. Defendant entered through the broken window. Arlisa fled up the stairs into her bedroom, closing the door. Defendant followed with the knife. He immediately attempted to force his way into the bedroom. Defendant tried to push his way into the bedroom and Arlisa tried to keep the door, which did not lock, closed. Defendant got his arm holding the knife into the room and was trying to stab at Arlisa. Arlisa was able to get the knife away from defendant. Jamila followed defendant up the stairs and tried to prevent defendant from harming her mother. Defendant told Jamila he did not wish to harm her, but he intended to kill her mother, and therefore Jamila needed to get out of his way. Jamila continued to obstruct defendant, and he pushed her down the stairs so he could continue his attack on Arlisa. Once Jamila was removed, defendant went downstairs to the kitchen to obtain another knife.[3] Defendant resumed his attack, forced his way into the bedroom, and began stabbing Arlisa. Arlisa was able to escape and flee outside the bedroom, where defendant reengaged her. A police officer arrived.

The attempted murder of Arlisa commenced at the latest when defendant, armed with a knife, forced his way into the residence and continued until a police officer arrived and forced defendant at gunpoint to desist. The assault on Jamila occurred during the course of the attempted murder of Arlisa and was committed to permit defendant to continue the attack on Arlisa. The offenses were committed in close spatial (top of the stairs) and temporal (essentially simultaneously) proximity against the same group of victims (the Coleman family). The acts overlapped and were uninterrupted. The assault on Jamila was committed while the acts constituting the attempted murder were unfolding.

I would remand to the trial court to allow it to exercise its discretion whether to impose consecutive or concurrent sentences for the attempted murder of Arlisa and the assault on Jamila. In all other respects, I concur in the majority opinion.

A petition for a rehearing was denied Feburary 15, 2001, and appellant's petition for review by the Supreme Court was denied April 25, 2001.

---

[3]The actual sequence of events is not entirely clear as to whether Jamila was assaulted by defendant before or after Arlisa managed to take the original knife from defendant.