Filed 7/13/22  P. v. Gonzalez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MIGUEL GONZALEZ,<br><br>    Defendant and Respondent. | H048806<br>(Santa Clara County<br> Super. Ct. No. C1901959) |

Defendant and respondent Miguel Gonzalez kicked his ex-girlfriend during an altercation in her apartment and, after her roommates intervened and led him outside and down the exterior stairs, pulled out a handgun and shot past the roommates at the occupied apartment.  Gonzalez pleaded no contest to felony assault and other charges related to the firing of the handgun and to the infliction of corporal injury on his ex-girlfriend, and admitted a prior serious felony conviction.  At sentencing, the trial court struck the punishment on the five-year enhancement for the prior serious felony conviction alleged pursuant to Penal Code section 667, subdivision (a)[1] (Proposition 8) and imposed an aggregate sentence of 12 years in prison, comprised in part of a concurrent rather than consecutive sentence on one of the counts.

---

[1] Unspecified statutory references are to the Penal Code.

The District Attorney of Santa Clara County (district attorney) appeals from the judgment. On appeal, the district attorney contends that the trial court's imposition of a concurrent prison term on the infliction of corporal injury count violated the mandatory consecutive sentencing rule under the Three Strikes law, as interpreted in *People v. Lawrence* (2000) 24 Cal.4th 219 (*Lawrence*), for felony offenses that were "not committed on the same occasion" and did not arise "from the same set of operative facts" (§§ 667, subd. (c)(6), (7), 1170.12, subd. (a)(6), (7)). The district attorney also contends that the trial court abused its discretion in striking the punishment for the prison sentence enhancement alleged pursuant to Proposition 8. For the reasons explained below, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

### A. *Facts*

On the evening of January 19, 2019, San Jose police officers responded to a report of a firearm being discharged at a San Jose apartment complex. According to the individuals interviewed, Edith F.[3] rented a room from a couple, Alondra C. and Christopher A. The 10-year-old son of Alondra and Christopher also lived with them.

Edith had been in a dating relationship with defendant Gonzalez for approximately seven to eight months before the incident. Earlier that evening, Gonzalez texted Edith that he would be coming over. Edith, who was not at the residence, contacted her roommate Alondra and asked that she not let Gonzalez inside. When Edith arrived home, she found Gonzalez sitting in the living room.

Edith walked into her bedroom, followed by Gonzalez. Gonzalez appeared to be intoxicated and under the influence of cocaine. Edith demanded that Gonzalez leave the

---

[2] There was no preliminary hearing or trial conducted in this matter. We take the facts from the probation report and sentencing briefs submitted by the parties, which derived their factual summaries from a San Jose Police Department report.

[3] To protect the privacy of the victims, we refer to their last names by first initial. (Cal. Rules of Court, rule 8.90(b)(4).)

room. Gonzalez grabbed Edith's right arm. As Edith attempted to push him out of the room, Gonzalez kicked her extremely hard on the left leg, causing a baseball-sized contusion. Christopher intervened and walked Gonzalez out of the bedroom. Shortly after, Edith heard a gunshot.

Alondra reported that she escorted Gonzalez out of the apartment and down the stairs when he yelled " 'Norte,' " reached behind his back, and pulled out a handgun. Gonzalez "racked the slide of the handgun, which ejected one round, then pointed the handgun up towards their residence balcony, where her family was standing, and fired one round." Christopher similarly reported that he was standing on the balcony with his son, watching Alondra walk Gonzalez downstairs, when Gonzalez "pulled out a handgun, racked the slide and shot one round" toward them.

Police officers recovered one spent shell casing and one unfired round at the base of the stairs. The path of the bullet went through a wall in the apartment, into the neighboring apartment, where it penetrated the ceiling of a closet and exited through the roof of the building. Gonzalez was apprehended some weeks later.

### B. Procedural History

#### 1. Charges

On January 28, 2019, the district attorney filed a felony complaint charging Gonzalez with assault with a semi-automatic firearm (§ 245, subd. (b); count 1), child endangerment (§ 273a, subd. (a); count 2), shooting at an inhabited dwelling house (§ 246; count 3), felon in possession of a firearm (§ 29800, subd. (a)(1); count 4), and inflicting corporal injury on a specified person (§ 273.5, subd. (a); count 5). As to the child endangerment charge, the complaint alleged that Gonzalez personally used a semi-automatic firearm pursuant to section 12022.5, subdivision (a). In addition, the complaint alleged that Gonzalez had suffered a prior serious felony conviction for assault with a

deadly weapon while personally inflicting great bodily injury (§ 245, subd. (a)), within the meaning of section 667, subdivision (a).[4]

## 2. Indicated Sentence and Sentencing Briefs

On February 10, 2020, after receiving an indicated sentence from the trial court of a sentencing range of 10 to 13 years in prison, with a maximum possible sentence of 29 years, Gonzalez pleaded no contest to all charges and admitted the allegation. The trial court advised Gonzalez that its indicated sentence was non-binding, which meant the court could decide at sentencing, after reviewing the probation report, to impose up to the maximum sentence. Gonzalez indicated he understood, and the trial court accepted Gonzalez's plea.

Both parties filed sentencing briefs prior to the scheduled sentencing hearing. The district attorney's sentencing brief summarized Gonzalez's current and prior offenses and challenged the basis for the trial court's indicated sentence. It asserted that the probation officer's sentencing report mistakenly understood the non-binding, indicated sentence as providing a " 'top' " or maximum of 13 years, and so "to 'keep within the parameters of the negotiated plea' " the probation report recommended only the midterm of 12 years in prison for count 1, despite noting that Gonzalez's firearm offense and criminal history " 'demonstrate[d] a pattern of serious violent behavior' " and that Gonzalez had multiple circumstances in aggravation and only one in mitigation.

The district attorney further asserted that under the Three Strikes law, Gonzalez "must receive" a consecutive, not concurrent, sentence for count 5, inflicting corporal injury on a specified person, because the domestic violence offense that Gonzalez committed against his former girlfriend inside the apartment was separate in time and

---

[4] The complaint also alleged that Gonzalez had served three prior prison terms within the meaning of then-current section 667.5, subdivision (b). On February 10, 2020, following the amendment of that statute based on the passage of Senate Bill No. 136, effective January 1, 2020, and upon the district attorney's motion, the trial court dismissed the three prior prison term allegations.

4

manner from the offenses committed outside the apartment against her roommates.  Thus, the district attorney argued that the Three Strikes provisions (§§ 667, subds. (c)(6), (7), 1170.12, subds. (a)(6), (7)), required consecutive sentences, and the circumstances of Gonzalez's offenses precluded any application of the narrow exception to that sentencing rule.

The district attorney relied on the California Supreme Court's analysis in *Lawrence*, *supra*, 24 Cal.4th 219.  The district attorney argued that a trial court's discretion to impose a concurrent sentence if the felony offenses were committed on the same occasion and arose from the same set of operative facts (*id*. at pp. 223, 233; see §§ 667, subd. (c)(6), 1170.12, subd. (a)(6)) could not apply in this case, where the offenses were not committed simultaneously or even against the same group of victims.  Rather, the district attorney asserted that Gonzalez kicked Edith while in the apartment and—only after her roommates had interceded and led him outside and downstairs—turned and fired a gun at the roommates from the exterior stairway.  The district attorney maintained that a concurrent sentence under these circumstances would be inconsistent with the factors and outcome in *Lawrence*.

The district attorney also challenged the recommendation to dismiss the prior serious felony conviction enhancement under section 667, subdivisions (a) (Proposition 8) and (b)–(i) (Three Strikes law) "without conducting an individualized analysis as required by section 1385."  The district attorney argued that dismissal of the prior serious felony enhancement was improper, as Gonzalez had been incarcerated or on probation, parole, or post-release-community-supervision "continuously for the past thirteen years," had committed new violent crimes shortly after being released, had done little to rehabilitate himself, and "falls squarely within the spirit of Proposition 8 and the Three Strikes law."

Gonzalez also filed a sentencing brief which focused on the circumstances of the charged offenses, his criminal history and strike prior, and personal circumstances.  The

defense's brief described Gonzalez's experience of domestic violence and abandonment as a child. Gonzalez's father was a severe alcoholic who regularly became intoxicated and beat Gonzalez, his siblings, and his mother. When Gonzalez was in elementary school, his father was arrested on domestic violence charges, and when Gonzalez was 13 years old, his father was incarcerated. His mother began dating a new man, and when Gonzalez did not feel safe at the man's apartment and asked to go home, his mother dropped him at a bus station and told him to forget he had a mother. The brief argued that at age 15, Gonzalez succumbed to the negative social and environmental pressures of the neighborhood and joined a gang for safety and survival. He began experimenting with illegal drugs and consuming alcohol.

Gonzalez's brief acknowledged he had his first encounter with the criminal justice system at age 17 and has been in and out of custody since then, serving time in county jail and prison. In 2018, Gonzalez was released on his most recent felony conviction, for possession of a stolen vehicle, before committing the current offenses in January 2019. Gonzalez's strike prior occurred in December 2009 when Gonzalez was 20 years old. Gonzalez had confronted a former friend with a knife and called him a "snitch" for confessing to a theft they had committed together, which had resulted the year prior in Gonzalez's conviction for theft from a person (§ 487, subd. (c)). Gonzalez tried to stab the victim near the face and neck, who raised his right arm to defend himself. Gonzalez slashed the victim's arm from the elbow to the wrist before the victim ran away and was driven to the hospital for treatment. Gonzalez was convicted of assault with a deadly weapon (§ 245, subd. (a)(1)), a felony, and admitted an allegation that he personally inflicted great bodily injury upon the victim, in violation of section 12022.7. Gonzalez received a five-year prison sentence, which was the longest sentence to date he had received.

6

Gonzalez also detailed his efforts to address anxiety, depression, and addiction, and to overcome his cycles of addiction and crime, including through enrolling in numerous parenting and rehabilitation programs both in custody and out of custody.

### 3. Sentence

On October 26, 2020, the trial court sentenced Gonzalez in accordance with its indicated sentence. The court determined the circumstances in aggravation and mitigation under California Rules of Court, rules 4.421 and 4.423, noting the factors in aggravation included Gonzalez's prior history and acts of violence, that he served prior prison terms, and that he did not complete his prior supervision satisfactorily. In mitigation, it found that Gonzalez had accepted responsibility for the instant offenses early in the proceedings.

As for the indicated sentence, the trial court recognized the district attorney's position that count 5 should be a consecutive term but concluded the domestic violence offense and firearm discharge were part of a single, continuous altercation, thus warranting a concurrent sentence. It explained, "I find that all of the offenses are part of Mr. Gonzalez'[s] altercation with his, then, girlfriend, and that the other victims became involved, consequently, during the altercation, as they tried to separate Mr. Gonzalez and his girlfriend, and then ushered Mr. Gonzalez out of the apartment. [The] [o]ffenses also occurred at the same location and very close in time, as part of the continuous evasive actions committed by Mr. Gonzalez." The court also noted that while it was "doubling the applicable terms for the counts" pursuant to sections 667, subdivision (b) and 1170.12, it would strike the additional five years of punishment that could be imposed under section 667, subdivision (a). It further found the offenses alleged in counts 1, 3, and 4 shared the same actus reus, and pursuant to section 654 Gonzalez could be punished only for the offense with the longest term under count 1.

The trial court accordingly imposed a prison sentence of 12 years on count 1, based on the midterm doubled, and a concurrent, midterm (doubled) of eight years on

7

count 2, plus a concurrent, four-year term on the enhancement under section 12022.5, subdivision (a). The court further imposed the midterms (doubled) of 10 years for count 3, and four years for count 4, and stayed punishment on those counts pursuant to section 654, subdivision (a). Lastly, as to count 5, the trial court imposed a concurrent middle term (doubled) of six years. The court struck the punishment for the five-year enhancement under section 667, subdivision (a), for an aggregate term of 12 years.

The district attorney timely filed a notice of appeal.

## II. DISCUSSION

The district attorney raises two claims of error. First, the district attorney contends that because the offenses in count 1 (assault with a semi-automatic firearm) and count 5 (inflicting corporal injury on Edith) were distinct in nature, involved different victims, and were separated in space and time, the Three Strikes regime governing Gonzalez's sentence mandated the imposition of a consecutive, rather than concurrent, prison sentence on count 5. The district attorney also contends that based upon the nature and circumstances of the offenses committed, and given Gonzalez's prior convictions and recidivism, the trial court abused its discretion by striking the punishment for the five-year enhancement for the prior violent felony alleged pursuant to Proposition 8.

### A. *Mandatory Consecutive Sentence Provision*

#### 1. Statutory Framework

In enacting the Three Strikes law, the Legislature sought "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious or violent felony offenses." (§ 667, subd. (b).) The law "prescribes increased punishment for a person who is convicted of a felony after sustaining one or more qualifying prior felony convictions or juvenile adjudications, which are commonly known as strikes. ([] §§ 667, subds. (b)-(i), 1170.12.)" (*People v. Barragan* (2004) 32 Cal.4th 236, 239.)

8

The consecutive mandatory sentencing provision of the Three Strikes law is set forth in section 667, subdivision (c)(6) (hereafter, section 667(c)(6); see also § 1170.12, subd. (a)(6)). The statute states, "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." (§ 667(c)(6).) Section 667(c)(6) thus "increases the punishment for certain recidivist offenders by making consecutive sentences mandatory in Three Strikes cases when the defendant was convicted of more than one offense not committed on the same occasion or arising out of the same operative facts." (*People v. Hojnowski* (2014) 228 Cal.App.4th 794, 800.)

To determine whether a defendant's current felony offenses are subject to mandatory consecutive sentencing, we look to our high court's interpretation in *Lawrence* of the statutory phrases "not committed on the same occasion" (§ 667(c)(6)) and "not arising from the same set of operative facts." (*Ibid*.) The court in *Lawrence*, relying on earlier precedent interpreting the first part of subdivision (c)(6), stated that the phrase " ' "committed on the same occasion" is commonly understood to refer to at least a close temporal and spatial proximity between two events, although it may involve other factors as well.' " (*Lawrence*, *supra*, 24 Cal.4th at p. 226, quoting *People v. Deloza* (1998) 18 Cal.4th 585, 594, italics omitted (*Deloza*).)

"The law deprives the trial court of discretion and requires consecutive sentencing only if the current crimes arose on different occasions *and* out of different sets of operative facts." (*People v. Coelho* (2001) 89 Cal.App.4th 861, 884, italics added (*Coelho*).) Thus, if the reviewing court determines the current felony convictions were "committed on the same occasion" within the meaning of section 667(c)(6), the mandatory consecutive sentencing rule does not apply and there is no need to ascertain whether the convictions arose from the same set of operative facts.

9

2. <u>Standard of Review</u>

Our review of the trial court's decision here is necessarily informed by the appliable standard of review. The district attorney does not articulate the applicable standard of review in his opening brief but appears to suggest the trial court erred as a matter of law because the court lacked discretion to impose a concurrent sentence where the current felony convictions were separated in space and time and did not arise from the same set of operative facts. (See *Deloza*, *supra*, 18 Cal.4th at p. 596, fn. 7.) Gonzalez counters that sentencing decisions are generally reviewed under the deferential abuse of discretion standard, though the level of deference may vary in accordance with the statutory grant of authority and the aspect of the ruling under review.

Where "a specific statute affects the extent and nature of a trial court's discretion, we examine [the] trial court's actions in light of the specific law bearing on that discretion." (*People v. Rodriguez* (2016) 1 Cal.5th 676, 685 (*Rodriguez*).) "[J]udicial discretion must be measured against the general rules of law and, in the case of a statutory grant of discretion, against the specific law that grants the discretion." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393.) We therefore consider whether the trial court's exercise of discretion is consistent with the statute's intended purpose and the legal principles governing the subject of the action. (*Rodriguez*, at p. 685.)

We also recognize "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.) If the trial court applies an incorrect legal standard or considers impermissible factors, those errors constitute an abuse of discretion. (*People v. Knoller* (2007) 41 Cal.4th 139, 156 (*Knoller*).)

10

3.  Analysis

Bearing in mind the interpretation of section 667(c)(6) provided by the California Supreme Court in *Lawrence* and *Deloza*, we consider whether the factual record supports the trial court's determination that Gonzalez's act in firing the handgun at the roommates occurred on the same occasion and as part of the same altercation that began in the apartment where Gonzalez harmed his ex-girlfriend.

The district attorney asserts that the trial court "focused solely on the close temporal and spatial proximity of the two crimes" and "did not consider any of the other required factors, such as the nature and elements of the current offenses, factors which the Supreme Court held dispositively required consecutive sentencing in *Lawrence*." This argument overlooks an important aspect of the statutory rule:  Where the offenses occurred on the same occasion based upon their close temporal and spatial proximity (*Deloza*, *supra*, 18 Cal.4th at pp. 594–596), it is immaterial whether they also arise from the same set of common operative facts.  (See *id.* at p. 596, fn. 7; *People v. Hall* (1998) 67 Cal.App.4th 128, 139; *Coelho*, *supra*, 89 Cal.App.4th at p. 884.)

Here, the record supplies substantial evidence to enable the trial court to determine the firearm offenses occurred "on the 'same occasion' " as the domestic violence offense—as the phrase " 'same occasion' " is commonly understood—based on the timing and proximity of the acts which formed the factual basis for Gonzalez's convictions.  (*Lawrence*, *supra*, 24 Cal.4th at p. 233.)

Gonzalez was convicted in count 1 of assault with a semi-automatic firearm (§ 245, subd. (b)) and in count 5 of inflicting corporal injury on a specified person (§ 273.5, subd. (a)).  It is true that the felonious acts (kicking Edith in the apartment, then firing the handgun toward Christopher, Alondra, and their son outside the apartment when he reached the bottom of the exterior stairwell) did not occur simultaneously or in precisely the same location; the offenses were separated by the unspecified amount of time it took Christopher to lead Gonzalez out the door of the apartment and Alondra to

11

lead him down the stairs. On the other hand, in reviewing the factual record based on the summary contained in the probation report, it is difficult to conceive of the offenses having occurred on separate "occasions" where, as the trial court observed, "the other victims became involved [] during the altercation, as they tried to separate Mr. Gonzalez and his girlfriend, and then ushered Mr. Gonzalez out of the apartment" and down the stairs, at which point he turned and fired his weapon at the balcony of the home from which he had just been removed.

We do not agree with the district attorney that by focusing only on the temporal and spatial proximity of Gonzalez's crimes, the trial court failed to consider the other facts relevant to the Supreme Court's determination as discussed in *Lawrence*. In *Deloza* and *Lawrence*, our high court applied the phrase "committed on the same occasion" to the factual circumstances in each case and drew distinctly different conclusions. Comparing the circumstances in *Deloza* and *Lawrence*, and the high court's analysis in both instances under the mandatory consecutive sentence provision, to the circumstances that formed the basis for Gonzalez's convictions in this case, we are unable to conclude that the trial court misapplied the relevant legal principles (see *Rodriguez*, *supra*, 1 Cal.5th at p. 685) or that its factual conclusions lack substantial evidence.

In *Deloza*, the California Supreme Court held that consecutive sentences were not mandated where the defendant was convicted of four counts of second degree robbery based on having entered a furniture store with an armed companion, robbed four victims, and left. Our high court summarized the basis for its decision as follows: "[Defendant's] robberies were committed in one location, and were apparently brief in duration. They were committed essentially simultaneously against the same group of victims, i.e., persons in the furniture store. While [a bystander] approached defendant, his criminal activity was not thereby interrupted, but merely continued with her as an additional victim. Nor was there any other event that could be considered to separate one 'occasion' of robbery from another. Given the close temporal and spatial proximity of defendant's

12

crimes against the same group of victims, they were clearly committed on the 'same occasion,' regardless of what additional factors may be found relevant in defining the precise parameters of this phrase in future cases." (*Deloza*, *supra*, 18 Cal.4th at pp. 595–596.)

In *Lawrence*, our Supreme Court expanded on and distinguished *Deloza*. It noted that because "the defendant's crimes in *Deloza* were committed in one location, were brief in duration, and were committed essentially simultaneously against the same group of victims, we had no difficulty concluding they were 'committed on the same occasion' within the meaning of section 1170.12, subdivision (a)(6) and (7) (see also § 667, subd. (c)(6) and (7)), and that consecutive sentencing was therefore not mandated." (*Lawrence*, *supra*, 24 Cal.4th at p. 227.) By contrast, the relevant offenses in *Lawrence* of felony petty theft with a prior and felony assault occurred when the defendant stole a bottle of brandy from a market, fled for a distance of one to three blocks (depending on the route taken) into a nearby backyard, and hit a resident of the house with the brandy bottle as the residents chased him from their backyard. (*Id.* at pp. 223–224, 228.) Our Supreme Court held that based on factors not present in *Deloza*, including the time between the offenses ("most likely" committed two or three minutes apart), their separate location (the market and the residence), and the "two entirely separate groups of victims" (e.g., assault victims who had no connection with the market) (*id.* at p. 228), the two felonies did not occur on the same occasion within the meaning of subdivision (c)(6). (*Id.* at p. 229.)

In analyzing whether the felony offenses occurred on the "same occasion," the court in *Lawrence* rejected the assertion that section 667(c)(6) may be interpreted to not apply to "crimes perpetrated against different groups of victims merely because the later crimes occurred while the defendant was still in flight from the initial crime scene." (*Lawrence*, *supra*, 24 Cal.4th at p. 229.) The high court emphasized that rather than use the distance he had gained from the market to flee along a public street and try to escape apprehension, the defendant entered into the resident's fully enclosed backyard and

13

"chose to commit new and separate crimes during his flight." (*Id.* at p. 228, italics omitted.)

The record here adequately supports the trial court's determination that the felony offenses in this case unfolded in close succession, as part of a single altercation comprising several criminal acts, more like the robberies at the furniture store in *Deloza* than the theft at the market and assault a few minutes later of an unrelated victim in *Lawrence*. Unlike in *Lawrence*, the victims were not "entirely separate groups" victimized at "separate locations" at distinct points in time, at least two or three minutes apart. (*Lawrence*, *supra*, 24 Cal.4th at p. 228.) Instead, it appears from the record that Gonzalez fired the handgun at Christopher's and Alondra's apartment precisely because they had become involved in the altercation by trying to remove him from the apartment after he inflicted bodily injury on Edith, who was living with them.

We recognize that a different sentencing judge might have drawn a different conclusion, but we identify no evidence in the record establishing that there was a break in the altercation or a sufficient distinction between groups of victims and crimes committed that would *preclude* the trial court from finding (as it did here) the offenses in counts 1 and 5 were "committed on the same occasion." (§ 667(c)(6).) This was not a scenario, like in *Lawrence*, in which case the perpetrator of one offense fled the scene of the first offense and subsequently committed a new and separate felony on an entirely separate victim at a different location. (Cf. *Lawrence*, *supra*, 24 Cal.4th at p. 228.) Instead, Christopher and Alondra intervened to remove Gonzalez, who had already perpetrated the felony against Edith in the home, and during the course of that removal, Gonzalez committed a new and separate felony directed at the family, which additionally put others at risk (given the bullet's trajectory).

The decisions in *People v. Durant* (1999) 68 Cal.App.4th 1393 (*Durant*) and *People v. Jenkins* (2001) 86 Cal.App.4th 699 (*Jenkins*), cited by the district attorney, do not alter our conclusion.

14

In *Durant*, the appellate court reversed the judgment after concluding the trial court lacked discretion under the Three Strikes provisions to impose concurrent sentences on three felony convictions—two attempted burglaries and one burglary—because the offenses were separate offenses which "did not occur on the 'same occasion' as that term is commonly understood." (*Durant*, *supra*, 68 Cal.App.4th at p. 1407.) There, however, the defendant had committed the separate offenses (*id.* at p. 1406) against three different residences in a housing complex. Though the crimes were committed in succession, the defendant spent several minutes or more at each residence he tried to enter (*id.* at p. 1397), plus time spent walking through the complex after each attempted burglary and before approaching the next residence. (*Ibid.*) We decide that the cadence between and circumstances concerning the felony offenses at issue here bear little resemblance to what occurred in *Durant* and are sufficient to support the trial court's assessment that the crimes occurred on the "same occasion." (§ 667, subd. (c)(6), (7).)

So too, in *Jenkins*, the appellate court's determination that the trial court properly sentenced the defendant to consecutive sentences on convictions for attempted murder and felony assault (*Jenkins*, *supra*, 86 Cal.App.4th at p. 707) does not dictate error here. In *Jenkins*, the defendant broke into the apartment occupied by his ex-girlfriend Arlisa, and Arlisa's daughter, Jamila. He chased Arlisa upstairs but she ran into her bedroom and pushed the door closed on him and took his knife. Meanwhile, Jamila took two knives from the kitchen and went upstairs to confront the defendant, who shoved her down the stairs. (*Id.* at p. 704.) He then went down the stairs, entered the kitchen, rummaged through the drawers, exited with another knife in his hand and went back upstairs, pushing aside the apartment manager who had entered and tried to step in front of the defendant. The defendant forced his way into Arlisa's bedroom and stabbed her multiple times. (*Ibid.*) A jury found the defendant guilty of felony assault on Jamila and the attempted murder of Arlisa. (*Id.* at p. 701.)

15

On appeal, the court rejected the defendant's claim that the trial court was "unaware it had discretion to sentence concurrently on" the attempted murder and felony assault counts (*Jenkins*, *supra*, 86 Cal.App.4th at p. 705), noting among its reasons the "defendant had completed his assault on Jamila well before he stabbed Arlisa," "his criminal conduct was interrupted for a significant time while he went downstairs, looked for a weapon, located a weapon, armed himself with the knife, and then pushed the manager out of the way before proceeding back up the stairs," and that "[h]is criminal conduct was further delayed while he searched for a weapon on the first floor." (*Id.* at p. 707.) In summarizing the relevant factors, the appellate court noted the separations "both in time and location, although [the offenses] all occurred within the same apartment" (*ibid.*), as well as the different people present and the time between offenses such that the "defendant could consider the consequences of continuing to commit new criminal acts." (*Ibid*.)

The district attorney contends that unlike the trial court in this case, the court in *Jenkins* "did not narrowly focus on the close temporal and spatial proximity between two or more events" but "correctly applied the legal principles described in *Deloza* and *Lawrence*." However, the record before us gives no indication of any comparable interruptions in timing between the offenses (such as while the defendant in *Jenkins* returned downstairs and searched through the kitchen drawers for a knife) or in interruptions in sequence (such as when the apartment manager in *Jenkins* entered the apartment and tried to intercede) (*Jenkins*, *supra*, 86 Cal.App.4th at p. 707), that would preclude a determination by the trial court that the offenses occurred on the "same occasion," as that phrase has been developed in the caselaw.

In sum, the factual basis set forth in the probation report for Gonzalez's current convictions suggests that the felony offenses at issue happened in quick succession and formed part of the same altercation, centered on the confrontation with Edith in her apartment and with Christopher and Alondra as they escorted Gonzalez outside. Under

16

these circumstances, the trial court's largely factual determination that the convictions were "committed on the same occasion" (§ 667(c)(6)) finds substantial support in the record. Consequently, the trial court had the authority to exercise its discretion in electing a concurrent or consecutive sentence as to count 5, and we reject the district attorney's argument that the trial court imposed an unlawful or "illegal" concurrent sentence. The district attorney does not otherwise challenge the trial court's exercise of discretion under section 667(c)(6), and we perceive no abuse of discretion in the trial court's imposition of a concurrent sentence on count 5, consistent with the statutory language. (§§ 667(c)(6), 1170.12, subd. (a)(6); see *Knoller*, *supra*, 41 Cal.4th at p. 156.)

### B. Prior Serious Felony Enhancement

#### 1. Statutory Framework

In 1982, California voters passed Proposition 8, which added sections 667 and 1192.7 to the Penal Code. Section 667, subdivision (a)(1) states, "A person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively." (§ 667, subd. (a)(1).)

Historically, section 1385 prohibited a judge from striking a prior serious felony enhancement imposed pursuant to section 667, subdivision (a). (See *People v. Dryden* (2021) 60 Cal.App.5th 1007, 1032 (*Dryden*), citing § 1385, former subd. (b); *People v. Shaw* (2020) 56 Cal.App.5th 582, 586 (*Shaw*) [explaining former section 1385, subdivision (b), which "made imposition of the five-year enhancement mandatory in all cases; courts had no discretion to strike or dismiss the enhancement pursuant to section 1385"].)

The passage of Senate Bill No. 1393 (Senate Bill 1393), effective January 2019, amended sections 1385, subdivision (b)(1) and 667, subdivision (a)(1), to permit a court

17

to strike a prior serious felony enhancement in furtherance of justice. (*People v. Stamps* (2020) 9 Cal.5th 685, 692 (*Stamps*); § 1385, subds. (a), (b)(1); Stats. 2018, ch. 1013, § 2, eff. Jan. 1, 2019.) As amended, the new law gave courts authority to dismiss an action or to strike or dismiss an enhancement "in the furtherance of justice." (§ 1385, subd. (a).) That provision was operative in 2020 when Gonzalez was sentenced.

As the California Supreme Court explained in *Stamps*, "Senate Bill 1393 removed provisions that prohibited a trial court from striking a serious felony enhancement in furtherance of justice under section 1385." (*Stamps*, *supra*, 9 Cal.5th at p. 700.) The measure "was intended to bring a court's discretion to strike a five-year serious felony enhancement in line with the court's general discretion to strike other enhancements. Thus, the Legislature gave a court the same discretion to strike a serious felony enhancement that it retains to strike any other sentence enhancing provision." (*Id.* at p. 702.)

Section 1385 subsequently underwent further amendments. (See Stats. 2021, ch. 721, § 1, eff. Jan. 1, 2022 (Senate Bill No. 81).) Section 1385 now requires a trial court to dismiss an enhancement if it is in the furtherance of justice to do so, affording "great weight to evidence offered by the defendant to prove" that specified mitigating circumstances are present, unless the court finds that dismissal would endanger public safety, as defined. (§ 1385, subd. (c)(1), (2).)

### 2. Standard of Review

As the district attorney points out, and other appellate courts have noted, there are "few published opinions following the enactment of Senate Bill 1393 that define the scope of a trial court's authority to strike a prior serious felony enhancement 'in furtherance of justice' (§ 1385, subd. (b)), or [that] discuss in any detail the standard of appellate review." (*Shaw*, *supra*, 56 Cal.App.5th at p. 585.)

In *Shaw*, the court reasoned that based upon cases decided in the "short window" in which courts previously had discretion to strike a prior felony conviction in

18

furtherance of justice, before statutory changes abrogated that authority, only to reinstate it with the passage of Senate Bill 1393 (*Shaw*, *supra*, 56 Cal.App.5th at pp. 586–587, citing *People v. Fritz* (1985) 40 Cal.3d 227, superseded by statute as noted in *People v. Fuentes* (2016) 1 Cal.5th 218, 230–231), the standard of review of a trial court's decision not to strike a prior serious felony enhancement is abuse of discretion. (*Shaw*, at p. 586.) Similarly, in *Dryden*, upon ordering reversal of the judgment and remand for resentencing on a separate issue under section 1385, subdivision (a), and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*),[5] this court directed the trial court to exercise its "new discretion" under Senate Bill 1393, and sections 667, subdivision (a) and 1385, to decide "whether, in the interest of justice, defendant's sentence should be reduced by [five] . . . years." (*Dryden*, *supra*, 60 Cal.App.5th at p. 1033.)

While the parties dispute the extent to which case authority delineating the bounds of discretion to strike prior felony convictions under the Three Strikes regime is relevant or useful in guiding our review of trial court decisions concerning the application of prior serious felony enhancements under Proposition 8, there is little question that the applicable standard of review is abuse of discretion. (See *People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

### 3. Analysis

The district attorney challenges the trial court's decision to strike the punishment for the five-year enhancement under Proposition 8 as an abuse of discretion that is both

---

[5] The court in *Dryden* determined the trial court had abused its discretion by declining to strike any of the defendant's prior Three Strikes convictions under section 1385, subdivision (a) and *Romero*, and reversed the judgment and remanded for resentencing on that ground. (*Dryden*, *supra*, 60 Cal.App.5th at pp. 1029–1032.)

19

unsupported by the record and contrary to the spirit of Proposition 8 and the Three Strikes law. He maintains that under the circumstances of this case, considering the nature and circumstances of Gonzalez's current felonies, his age, his pattern of recidivism while on probation and parole, prior prison terms, and the absence of intrinsic mitigating factors, the trial court abused its discretion in striking the punishment for the prior serious felony enhancement in a seeming effort to stay within an arbitrary and preselected term of imprisonment.

In arguing that the trial court's decision falls outside the bounds of its discretion, the district attorney relies on case authority interpreting judicial discretion to strike a prior strike allegation under section 1385. He asserts that "[l]ogically, the analysis of whether to strike or dismiss a prior serious or violent felony conviction alleged pursuant to Proposition 8 or the Three Strikes law must be similar because the 'scheme' of Proposition 8 and the Three Strikes law is the same. Both sentencing enhancements were passed by the California voters for the purpose of increasing the punishment for those who have been previously convicted of serious and/or violent felony offenses and to restrict courts' discretion in sentencing repeat offenders." (Bolding omitted.)

Gonzalez counters that the district attorney's reliance on Three Strikes cases is misplaced. He argues that a court's discretion for dismissing a strike is fundamentally narrow. Under *Romero*, a court may strike prior felony conviction allegations in cases arising under the Three Strikes law "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Romero*, *supra*, 13 Cal.4th at p. 504.) By contrast, Gonzalez submits that pursuant to Senate Bill 1393, the discretion to dismiss a prior serious felony enhancement under Proposition 8 turns simply on whether, in the interest of justice, the applicable five-year enhancement or enhancements should be stricken. (§ 1385.)

The statute in effect at the time of Gonzalez's sentencing expressly authorized the trial court to strike a serious felony enhancement "in furtherance of justice." (§ 1385,

20

subds. (a), (b)(1).)  Turning to the Supreme Court's examination of that phrase in *Romero*, we note that within the meaning of section 1385, " ' " 'furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal." . . . At the very least, the reason for dismissal must be "that which would motivate a reasonable judge." ' " ' " (*Romero*, *supra*, 13 Cal.4th at pp. 530–531, internal citations omitted.)

Ultimately, we need not decide for purposes of resolving this appeal the extent to which a trial court's authority to strike a serious felony enhancement "in furtherance of justice" (§ 1385, subds. (a), (b)(1)) is properly informed by appellate case authority under the Three Strikes law and *Romero*, which defines the scope of discretion to strike a prior strike conviction.  Even if we assume, without deciding, that a court's discretion to strike a prior serious felony enhancement is confined to similar limits as constrain a court's exercise of discretion under *Romero*, we do not agree that the trial court abused its discretion in this instance.

The trial court indicated from the outset at the sentencing that it had reviewed the sentencing briefs and probation report and identified the circumstances in aggravation and mitigation under California Rules of Court, rules 4.421 and 4.423.  The trial court listed several factors in aggravation, including Gonzalez's criminal history, prior violent felony, prior prison terms, and failure to complete his supervision satisfactorily, and explicitly referenced one factor in mitigation, based on Gonzalez's acceptance of responsibility early in the proceedings.  Thus, the trial court was well aware of the factors the district attorney contends precluded an exercise of discretion under section 1385.  Nevertheless, the court elected to exercise its discretion to strike the punishment for the Proposition 8 prior.  It explained, "In this matter, given the other – given both the acceptance of responsibility, I still find that Mr. Gonzalez has some relative – or relevant and relative youth.  My hope is that a 12-year sentence will satisfactorily be a deterrent

for any future conduct in this case, particularly, given that in sentencing him within a strike-sentencing scheme I don't believe that the additional five years of punishment would be in the interest of justice in this case. And, therefore, as I indicated earlier, for that reason, I am not going to be imposing it."

In articulating these factors (particularly after having recognized other, significant circumstances in aggravation under the California Rules of Court), the trial court demonstrated it recognized and had considered such factors as might have persuaded it to impose the punishment for the five-year enhancement; yet it ultimately concluded, based on other mitigating factors—particularly Gonzalez's "acceptance of responsibility," that the 12-year (midterm doubled) prison term would serve to deter future criminal conduct and so imposing the additional five years was not in furtherance of justice. We furthermore can infer from the court's finding as to Gonzalez's acceptance of responsibility, and in light of its consideration of the parties' sentencing briefs, that in drawing this conclusion the court weighed and credited the lengthier statement of responsibility and discussion of Gonzalez's character and prospects as presented in Gonzalez's papers.

Gonzalez's sentencing brief described in detail his initial success, upon release in 2018 from his most recent felony commitment, both in obtaining employment and devoting time toward building a strong, healthy relationship with his daughter, for whom he " 'wanted to be a father, a role model.' " Gonzalez began working for his father's company in the sheet metal industry in February 2019, but his employment ended shortly after because his postrelease community supervision did not permit him to continue the position due to the amount of travel required for the job. Gonzalez's brief acknowledged

that Gonzalez became frustrated and turned to drinking again, leading him to act recklessly, to lose focus, and to fail to consider the consequences of his actions.[6]

On this record, we cannot say the trial court's decision to strike the punishment for the enhancement was so irrational or arbitrary as to constitute an abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 377.)  The reasons articulated by the trial court for declining to impose the five-year term attached to the prior serious felony enhancement in light of the other sentencing factors considered are not outside the bounds of that which would motivate a reasonable judge exercising its discretion under section 1385. (*Romero*, *supra*, 13 Cal.4th at pp. 530–531.)

In arguing that the trial court's stated reasons for striking the punishment are not valid under *People v. Williams* (1998) 17 Cal.4th 148, the district attorney fails to acknowledge that a defendant's acceptance of responsibility—not merely by taking an early plea but by recognizing the underlying causes and committing to address the related issues of alcohol and substance abuse—is a consideration that sentencing courts may properly weigh even under the Three Strikes scheme.  As expressed in *Williams*,

---

[6] In his sentencing brief, Gonzalez expressed that he was " 'so frustrated' with himself, questioning why he keeps surrendering to addiction and returning to old habits." Gonzalez stated that he recognized he turned to alcohol to cope with his feelings of depression and anxiety and familial pressures.  He feared what he would face returning to prison, from drug addiction, violence, depression and anxiety, but described his daughter as the one thing that gave him hope.  Gonzalez stated that he writes in his journal to his daughter "[e]very day, . . . apologizing for the actions that l[e]d him here, begging her to learn from his mistakes, and reminding her that he will always be her biggest fan, her greatest supporter, and her dad."  Gonzalez stated he is hopeful "that he can regain his relationship with [his daughter] when he is released from custody and return to his hobbies of working on cars, bike riding, and listening to music."  He planned to "strive[] for a union job in the sheet metal industry" and "to obtain a sponsor through Alcoholics Anonymous, work the steps, join a support group, and continue to fight and conquer his addiction."  Through programming in custody, Gonzalez stated he was " 'really trying to get the things they teach [him].  [He] want[s] to understand why [he] do[es] the things [he] do[es].  When [he] get[s] triggered, [he] want[s] to stop [him]self and find a better route.' "

23

"preponderant weight must be accorded to factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*Id.* at p. 161.) Nor is there any evidence in the record to suggest the trial court here struck the punishment simply because Gonzalez pleaded guilty, "solely 'to accommodate judicial convenience or because of court congestion' " (*Romero*, *supra*, 13 Cal.4th at p. 531), or out of " 'a personal antipathy for the effect that the [sentencing enhancement] would have on [Gonzalez]' while ignoring 'defendant's background,' [and] 'the nature of his present offenses.' " (*Ibid.*)

Ultimately, the district attorney takes issue with the trial court's weighing of factors in application of the statutory framework "in furtherance of justice" (§ 1385, subds. (a) and (b)(1)), not with the propriety of factors presented to and considered by the trial court. But even if this court were to agree with the district attorney that the trial court gave undue weight to mitigating factors like youth and responsibility while failing to accord weight to aggravating factors like violence and recidivism, this court's disapproval of the trial court's discretionary exercise does not warrant reversal. "A reviewing court's disagreement with the trial court's weighing of proper factors (as distinct from the trial court's reliance on improper factors in the weighing process) does not constitute an abuse of discretion." (*Dryden*, *supra*, 60 Cal.App.5th at p. 1029.) As a reviewing court, we are not able to observe the demeanor of the defendant or evaluate his sincerity in taking responsibility for his criminal acts, and "we therefore do not substitute our discretion for that of the trial court." (*Id.* at p. 1031.)

The district attorney asserts that because Proposition 8 is narrower in scope than the Three Strikes law (applying to defendants convicted only of a serious felony who have been previously convicted of one or more serious felonies (§ 667, subd. (a)(1)), as opposed to defendants convicted of a felony who have a prior serious felony conviction (§ 667, subds. (b)–(i)), a trial court's discretion to dismiss a prior strike conviction

alleged pursuant to Proposition 8 must be *more limited* than its discretion to dismiss the same prior strike conviction alleged pursuant to the Three Strikes law. He offers, however, no authority for this proposition, and we see no basis for it in the statutory text.

We recognize the district attorney's frustration with the sentence imposed by the trial court. Another sentencing judge might have parsed the facts differently or exercised her discretion to include the additional five-year sentence for the prior serious felony enhancement in Gonzalez's aggregate sentence. Gonzalez undoubtedly engaged in dangerous behavior, causing a serious injury to Edith and recklessly firing a bullet at an occupied apartment. Gonzalez has been in prison or under supervision for most of his adult life, and his crimes arguably show an increasing pattern of severity.

On the other hand, Gonzalez is still a young man and presented a number of mitigating factors in his sentencing papers, notably traumatic childhood experiences that the Legislature has recently identified as presumptively warranting reduced punishment. (See § 1170, subd. (b)(6)(A).) Moreover, Gonzalez's longest prison term before these offenses had been five years—the trial court's sentence in this matter is far more severe than any he had previously received.

We have carefully reviewed the record and the cases relied upon by the district attorney. As we cannot conclude the trial court misapplied the law or selected a sentence falling outside the bounds of its discretion, we affirm the judgment.

### III. DISPOSITION

The judgment is affirmed.

_____
Danner, Acting P.J.

I CONCUR:


_____
Wilson, J.

**H048806**
*People v. Gonzalez*

Lie, J., Concurring:

Although I otherwise join the majority's analysis and conclusions, I respectfully disagree with the majority's analysis in section II.B.3. But recent changes to Penal Code section 1385 appear to have rendered moot the District Attorney's challenge to the adequacy of the trial court's stated reasons for dismissing the serious felony enhancement under Penal Code section 667, subdivision (a). (See Pen. Code, § 1385, subd. (c)(2)(B).) Because the Legislature's amendment of Penal Code section 1385 in my view makes it unnecessary to address the merits of this particular claim, I will not belabor them here.

_____
LIE, J.

**H048806**
*People v. Gonzalez*